JAMES C. HARPER v. WALTER N. CARROLL and Others.[1]

December 23, 1896.

Nos. 10,230—(115).

**G. S. 1894, c. 76—Judgment against Stockholders.**

In an action under G. S. 1894, c. 76. to enforce the double liability of the stockholders of an insolvent corporation, *held*, the creditors are entitled to a judgment against each stockholder for the full amount of his statutory liability, even though the aggregate amount of this judgment exceeds the aggregate amount of all the corporate indebtedness and costs and expenses of the action to be satisfied by such judgment. Clarke v. Opera-House Co., 58 Minn. 16, distinguished.

[1] Reported in 69 N. W. 610, 1069.

| | |
|---|---|
| 66 | 487 |
| 70 | 75 |
| 66 | 487 |
| 72 | 282 |
| 72 | 315 |
| 73 | 458 |
| 73 | 459 |
| 73 | 461 |
| 73 | 465 |
| 73 | 466 |
| 74 | 362 |
| 66 | 487 |
| 75 | 147 |

### Same—Successive Executions.

But *held*, where the aggregate amount of the judgment so exceeds the aggregate amount to be satisfied by the same, execution should not be issued against some or all of the stockholders for the full amount of the judgment against each,—but the judgment should, by its terms, provide for issuing successive executions on the order of the court, at first for each stockholder's pro rata share of such indebtedness and expenses, and then for subsequent successive executions for such additional pro rata amounts or assessments as may be found necessary by reason of the failure to collect from stockholders found to be insolvent in attempting to satisfy the prior execution; and, when such indebtedness and expenses are paid in full, the balance of the judgment against those stockholders paying their full share of the same shall be satisfied. Execution should be issued on the judgment accordingly.

### Same—Stay—Bond.

The court may, in its discretion, on application on notice, stay the docketing of the judgment against any particular stockholder on the giving of a bond to pay each and every assessment on the judgment due from such stockholder, whenever ordered by the court.

### Liability of Stockholder—Transfer—Judgment.

Under G. S. 1894, § 2501, the stockholder of a banking corporation is liable to double the amount of his stock in an action under chapter 76, if the bank becomes insolvent and suspends payment within one year after he transferred his stock. But *held*, such a transferror is only secondarily liable, and execution should not issue against him until his transferee fails to respond to execution against him for his liability for the same stock; and in such a case it is error to enter a judgment which permits the creditors to collect twice for the same block of stock, once from the transferee, and again from the transferror.

### Same—Successive Holders of Stock—Liability.

The liability of such transferror is secondary only to the liability of the succeeding holders of the same block of stock, and not, as held by the court below, secondary to the liability of all subsequent transferrors of the same or any other stock.

### Same—Division of Liability.

While such transferror is liable only for his proper share of the indebtedness still existing, which existed at the time he transferred his stock, still he should not escape liability because this amount has been already collected from others reached before him in the order of liability adopted by the court; and it was error so to provide.

### Same—Dividend.

Such transferror should, as well as the present stockholders, be allowed the benefit of any dividend realized from the corporate assets.

## Same—Procedure.

The manner of determining the portion which the transferror should pay of such indebtedness existing at the time of his transfer stated.

## Same—Distribution.

The amounts collected from each transferror must be put into the common fund, and distributed ratably among all the creditors.

## Same—Contribution.

Such transferror cannot be made to contribute either directly or indirectly on account of debts incurred after he made his transfer, or debts which existed at that time, and have since been paid.

## Constitution—G. S. 1894, § 2501.

Following Allen v. Walsh, 25 Minn. 543, 551, *held*, said G. S. 1894, § 2501, imposing the double liability on the stockholders of banking corporations, is constitutional.

## Transfer of Stock—Extension of Debts—Consent.

*Held*, it is not necessary to consider whether, after a transfer of stock, an extension of the time of payment of corporate debts without the consent of the transferror releases him from liability as to the debts so extended, because, even if such transferror becomes a mere surety for the payment of corporate debts, it does not appear in this case that he did not consent to the extension, and the burden is on him to prove that he did not.

## Unregistered Transfer—Stockholder.

Where a transfer of stock was never registered on the books of the bank until after the bank failed and made an assignment, when it was registered as a transfer from him to the bank itself, *held*, it was error to charge such assignor as liable only as transferror on the amount of indebtedness existing at the time he assigned his stock, but he should be held liable as a present stockholder.

## Pledge of Stock.

Where a pledgee of stock registered it on the books of the bank as transferred to himself absolutely, *held*, he voluntarily made himself a stockholder, is liable as such, and the court cannot relieve him from any part of his liability.

## Unregistered Transfer—Cross Bill by Assignor.

Where an assignee of stock failed to register the transfer on the books of the bank, so that the assignor continued to be liable as a present stockholder, and he filed a cross bill against the assignee (already a party to the suit), who is in default for want of an answer thereto, *held*, the creditors need not undertake to enforce any liability against such assignee, or accept the benefit of such attempted enforcement by the assignor; but, under the circumstances, the latter may retain his present hold on the former for the purpose of compelling contribution by him in this action for any sum which the latter may be compelled to pay herein.

### Stockholder as Creditor—Judgment—Procedure.

When a stockholder is also a creditor, it is proper to order judgment against him for the full amount of his statutory liability, the same as against other stockholders, to declare the judgment against him a lien on the amount due him, and to order him to pay all assessments on such judgment until the court is fully satisfied that the dividend coming to him will fully pay the balance due from him on any further assessments on the judgment against him, when the collection of such further assessments may be stayed, and on distribution the dividend due him may be set off against such assessments.

### Contribution by Nonresident Stockholders—Continuance—Procedure.

Four days before the trial, plaintiff discovered that nonresident stockholders, over whose persons the court did not and could not acquire jurisdiction, had property within this state. On the trial, the defendant stockholders objected to entry of judgment until the court should acquire jurisdiction over this property by attachment. *Held*, at that late day, these defendants were not entitled to delay the trial or other proceedings in order to make this property contribute to the payment of the corporate debts; but the court might, in its discretion, compel the plaintiff or other creditors to attach and proceed to condemn the property, and, if condemned too late to contribute directly, it or its proceeds might, after the creditors were paid in full, be applied to reimburse those stockholders who had paid more than their share.

### Receiver's Expenses.

*Held*, the creditors are entitled to recover the receiver's expenses in addition to their debts and statutory costs and disbursements, not exceeding the amount of the stockholders' statutory liability.

### Several Liability—Effect of Judgment—Creditors are Tenants in Common.

The stockholders' liability is several, not joint; and a judgment against only a part of the stockholders, within the jurisdiction, does not have the effect of releasing the others. While such liability is several, it produces only a limited fund, which belongs to all the creditors as tenants in common, and must be enforced in equity.

### Variance—Review.

A variance between the judgment entered by the clerk and that ordered by the court cannot be raised for the first time on appeal, but an application should be made to the court to correct the judgment.

### Judgment of Contribution.

It is proper to provide in the judgment that, after the receiver has collected in full or has exhausted all the collectible liability, a judgment of contribution may be entered in favor of those who have paid more than their share, and against those who have paid less.

**Death of Defendant—Procedure against Her Transferror.**

After the commencement of this action, a stockholder who had been served with summons died, leaving no property within the jurisdiction of the court. *Held*, her transferror should, on the first assessment on the judgment against the stockholders, be made to contribute on the amount of indebtedness existing at the time of the transfer.

Action in the district court for Hennepin county. The case was tried before Elliott, J., who found in favor of plaintiff, and judgment was entered against certain defendants. Some of defendants appealed from orders denying their motions for a new trial, and others appealed from the judgment. Modified.

*Shaw, Cray, Lancaster & Parker, Hahn & Hawley, Woods, Kingman & Wallace, Jones & Babcock, John B. Atwater,* and *Wilkinson & Traxler*, for appellants.

*W. S. Dwinnell* and *Young & Fish*, for respondent.

CANTY, J.[2] This is an action to enforce the statutory double liability of the stockholders of the Citizens' Bank of Minneapolis, a banking corporation, organized under chapter 33 of the General Statutes of this state. This is the second appeal in the case. See 62 Minn. 152, 64 N. W. 145. After the former appeal, the case was tried by the court, without a jury.

From the findings of the court and other proceedings, the following facts appear: On May 17, 1893, the bank suspended payment, closed its doors, and ceased to do business. Thereafter, on July 8, 1893, it made a general assignment for the benefit of its creditors, under the insolvency law of 1881. The assignee qualified, administered the assets of the bank, and paid to the creditors dividends amounting in all to 29 per cent. of their claims, which is all that will be realized from the assets of the bank unless something is collected or realized on certain judgments against certain apparently insolvent judgment debtors of the bank.

The plaintiff, a creditor of the bank, commenced this action, making all of the resident stockholders parties. An order was made for creditors to exhibit their claims and become parties to the action. In pursuance thereof, 337 creditors did so. Their claims were proved and allowed, amounting in the aggregate to $202,524.50,

[2] BUCK, J., absent.

from which was deducted the 29 per cent. in dividends paid by the assignee. The balance, with interest thereon to February 8, 1896, the date of the order for judgment herein, amounted to $175,223.69. The capital stock of the bank is $250,000, but stockholders holding in the aggregate $28,800 of this stock are nonresidents, and no service on them or jurisdiction over them was obtained in this action.

Judgment for double the amount of his stock was ordered against each of the other stockholders except J. U. Barnes, who holds $1,000 of stock, and who seems to have been overlooked by inadvertence in the conclusions of law and order for judgment until long after these appeals were taken, when the court amended its order and conclusions. Judgment was also ordered for double the amount of his stock against each prior stockholder who held stock within a year before the assignment and transferred it during that time. The aggregate amount of judgment so ordered against such present and prior stockholders is $513,200. The court makes some distinctions between the liabilities of the present stockholders and the liabilities of the prior stockholders, which distinctions we will notice more fully hereafter.

The conclusions of law and order for judgment further provide that after the receiver has collected all amounts due the creditors, or all he is able to collect, any defendant stockholder or stockholders who have contributed more than his or their share may apply to the court, on notice, for a judgment of contribution against all other stockholders who have contributed less than their share. The court reserves no judicial control over the executions to be issued against the stockholders in the different classes, and makes no provision for issuing execution against any stockholder for any less amount than the full amount of the judgment against him; except, possibly, in some contingencies, as to some of such prior stockholders as hereinafter stated.

Some of the defendant stockholders appeal from orders denying their motions for a new trial, and others appeal from the judgment.

1. Appellants contend that it is error to enter judgment against each stockholder for the full amount of his statutory double liability, when the amounts for which judgment is so entered aggregate two or three times the amount of the corporate indebtedness to enforce payment of which judgment is given. Thus, in this case the amounts

for which judgment is so entered against the stockholders aggregate $513,200, while the amount of such corporate indebtedness is only $175,223.69. It is contended that such judgment is the final adjudication of the rights of the parties, and that the court should, before the entry of judgment, determine which stockholders are solvent, and which are insolvent, and order judgment against each of the solvent stockholders for his pro rata share of the whole balance of the corporate indebtedness, to be apportioned among such solvent stockholders in proportion to the amount of stock held by each.

We cannot agree with appellants. This would leave the creditors to incur the risk, not only of an erroneous decision on the part of the court that some stockholders were solvent who were, in fact, insolvent, but also the risk of some stockholders becoming insolvent between the time the court ordered judgment and the time of entry thereof or levy of execution. After the court determines who are and who are not solvent stockholders, appeals may be taken which will delay the entry of judgment or issue of execution for months and even years. When the time finally arrived when the creditors could issue execution, they might find many to be execution proof whom they had always regarded as solvent. If the creditors took all of these risks, it would often happen that they would find themselves unable to collect one-half their claims when they came to test by execution the solvency of the stockholders found by the court to be solvent. But, though not one-half of the statutory double liability of the stockholders had been exhausted in the entry of judgment, the judgment would, as appellants contend, be a final determination of the rights of the creditors, and they would be remediless as to the balance of their claims left uncollected.

Conceding that the liability of the stockholders is only secondary, and that in some respects they may be regarded as sureties, each to a limited amount, for the corporate indebtedness, and are only liable for the balance remaining unpaid after the corporate assets are exhausted, in what other kind of a case is the creditor required to take such risks in the entry of judgment against the sureties for his principal debtor, as appellants insist that these creditors should take, and why should they be required to take these risks in such a case as this? In what other instance is the surety given a chance

to escape a part of his liability to the creditor by any doctrine of apportionment of the indebtedness between him and his co-sureties? It is clear that the creditors in this case cannot be required to take any such risks. They are entitled to collect the full balance of their claims, even though it exhausts the statutory double liability of every stockholder to its full limit. Who can say in advance that it will not exhaust such liability to its full limit, and in what other way can this be determined except by the issue of execution?

Then, one of two propositions must be true: First, the creditors are entitled to successive judgments for successive assessments until the full limit of such statutory liability is exhausted, if such successive assessments and judgments are made necessary by reason of the insolvency of stockholders; or, second, the creditors are entitled to one judgment for the full amount of such statutory liability. We are of the opinion that the latter is the proper method of procedure, and that but one judgment should be rendered, which should cover the utmost possible liability of each stockholder to the creditors.

The former decisions of this court are not in conflict with this position. In Clarke v. Cold Spring O. H. Co., 58 Minn. 16, 59 N. W. 632, the court merely held that, where the plaintiff (the only creditor) failed to bring in all the solvent stockholders within the reach of process, he could not complain that the court awarded him only such a pro rata judgment against the (presumably solvent) stockholders brought in as would, with the same pro rata amounts contributed by said stockholders not brought in, make up the amount of his claim. In First Nat. Bank v. Winona Plow Co., 58 Minn. 167, 59 N. W. 997, the appellant stockholders contended that each stockholder is only liable to the amount of his stock, ratably with all other stockholders, solvent and insolvent, within reach of process, and beyond reach of same. We simply held that the position was not well taken.

2. But, while the creditors are entitled to judgment in the first instance against each stockholder for the utmost possible limit of his liability to them, it does not follow that they should be allowed to use this judgment oppressively, by issuing execution against some or all of the stockholders for the full amount of the judgment against each, or by collecting all of their claims from some of the solvent

stockholders, leaving these to seek contribution from other solvent stockholders. Though regulated by statute, this is essentially an equitable proceeding, and the rules of equity should be applied unless inconsistent with the provisions of chapter 76, or the theory of our code practice, as modified by chapter 76. The execution of the judgment in this case should not have been left solely to the ministerial officers of the court, the receiver and sheriff, who must issue and levy execution for the full amount of the judgment against each stockholder, when execution is issued against him at all; and it is error to order and enter in this case a judgment which, in legal effect, makes its execution solely a ministerial duty.

The court should, by the terms of the judgment, reserve judicial control over the issue of execution. The judgment should provide for issuing execution on the order of the court, at first for each stockholder's pro rata share of the corporate debts and the expenses of this action, and then for the issue on the order of the court of subsequent successive executions for such additional pro rata amounts or assessments as would be found necessary by reason of the failure to collect from stockholders found to be insolvent in attempting to satisfy the prior executions. When the corporate indebtedness and costs and expenses of the action are paid in full, the balance of the judgment against those stockholders paying their full share of the same shall be satisfied. The judgment in this case contains no such provisions.

3. Again, in answer to the charge that a judgment against each stockholder for the utmost limit of his liability is, in such a case as this, oppressive, we will say that it is in the discretion of the court below, when applied to on notice, to stay the docketing of the judgment on the giving of a sufficient bond, conditioned to pay each and every instalment or assessment on the judgment due from the particular stockholder as soon as such instalment or assessment is ordered by the court, or within a specified time thereafter, and that upon breach of the bond the judgment may be forthwith docketed.

4. Different appellants, some of them present stockholders and others prior stockholders, assign as error different provisions in the conclusions of law and order for judgment, relating to the manner in which the transferrors of stock within the year are held liable for the corporate debts.

Section 2501, G. S. 1894, provides:

"The stockholders in each bank shall be individually liable in an amount equal to double the amount of stock owned by them for all the debts of such bank, and such individual liability shall continue for one year after any transfer or sale of stock by any stockholder or stockholders."

On the former appeal in this case, we held that such a prior stockholder is not liable for the debts contracted after he has in good faith transferred his stock, but is liable for the debts existing at the time of such transfer, if within a year thereafter a cause of action under section 5900 arises against the bank. Such a cause of action arose against the bank in this case when it closed its doors, on May 17, 1893. But as the court below and all parties on this appeal treated July 8, 1893, the day of the assignment, as the date which fixes the end of the year within which the transfer must have been made in order to hold the prior or transferring stockholders, we will so treat it. Transfers of stock were made on 21 different dates during the year ending July 8, 1893.

In making its findings of fact, the court prepared a table (Schedule A), giving the name of each of the creditors of the bank whose claim has been allowed herein, the amount of indebtedness held by him on July 8, 1893, and the amount held by him on each of said other 21 dates. These amounts were arranged in 20 columns, one column for each date, except that the last column represents three dates, the amount of such indebtedness being the same on each of these three dates. In the fifth conclusion of law, the court orders the receiver to proceed by execution against the present stockholders, and to collect from them sufficient to pay all the claims of "the intervenors," and the expenses of this action, and, out of the amount so collected, pay—First, said expenses, and, second, said claims. The court then proceeds at great length, in its conclusions of law, to order judgment against each prior stockholder who transferred stock within the year, commencing with him whose transfer was on the latest date, then with him whose transfer (not of the same stock, but of any stock) was on the next latest date, and so on, to him whose transfer was on the earliest date. There were two forms of these conclusions of law, of which the following, leaving out dates and names, are samples.

One reads thus:

(1) "That in case the amounts collected from said stockholders against whom said receiver has been hereinbefore instructed to proceed are insufficient to liquidate and pay in full the claims of intervenors which existed on the (day of transfer), as appears by Schedule A, and in case the defendant (transferee) shall have failed to pay and liquidate the judgment herein, and the receiver shall be unable to collect all of the same, then that the receiver proceed to collect so much of the judgment against said (transferror) rendered upon stock so subsequently held by said (transferee), or so much thereof as shall remain after deducting the amount paid by said (transferee) on the judgment against him for his liability on the same stock, as may be necessary to pay and liquidate the claims of all intervenors existing at that time, and still remaining unpaid."

The other reads thus:

(2) "That in case the amounts collected from said stockholder against whom said receiver has been hereinbefore instructed to proceed are insufficient to liquidate and pay in full the claims of intervenors which existed on the (day of transfer), as appears by Schedule A, then that the receiver proceed to collect so much of the judgment against said (transferror) upon the stock so transferred by him on the said (day of transfer) as may be necessary to pay and liquidate the claims of all intervenors existing at that time."

It will be observed that the first form of conclusion of law above quoted makes the liability of the transferror depend (among other things) on the failure of his transferee to respond in full to the judgment against him; while under the second form the transferee may have responded in full, and yet the transferror would be liable if the amounts collected up to the time he was reached in the order adopted were not sufficient "to pay in full the claims of intervenors which existed on the" day of the transfer. This is erroneous. The creditors should not collect twice for the same block of stock,—once from the transferee, and again from the transferror.

5. But there are other respects in which both these classes of conclusions of law are erroneous. It is proper to provide that, before resorting to the judgment against any transferror, the judgments against all his successors in interest of the same block of stock shall be first exhausted. But it will be observed that these conclusions of law, following one another as they do, require the judgments against all the later transferrors, not of the same stock, but of any stock, to be first exhausted, before resorting at all to any

judgment against any earlier transferror of the same or any other stock.

If A. transferred a block of stock to B. on a certain day, and C. transferred a wholly different block of stock to D., a day, or week, or month earlier, why should the creditors exhaust the judgment against B. before resorting to the judgment against D.? If, in that case, A. and C. are the present stockholders, and B. and C. their predecessors, why should the judgment be exhausted against A., B., and C. before resorting to the judgment against D.? Yet this is what the court has ordered in this case, and we are of the opinion that it is error. The liability of each transferror of a block of stock is secondary only to the liability of the succeeding holders of the same block of stock, and not, as held by the court below, secondary to the liability of all subsequent transferrors of other and different blocks of stock. The degree in which a transferror's liability is secondary depends, not on the date of his transfer, but on the number of subsequent transfers of the same block of stock.

6. Again, it was error to declare, as these conclusions of law in effect do, that such transferror is not liable at all if, before he is reached in the order of liability adopted, there is collected from others sufficient "to pay in full the claims of intervenors which existed" on the day he transferred his stock. One-tenth of the present indebtedness may not have existed when he transferred his stock, and none of his successors in interest may have responded to the judgment against them on that same stock; and yet, if as much as one-tenth of the present indebtedness has been collected from other stockholders, he escapes liability, although the creditors will receive but one-tenth of their claims, and those for whom he is answerable have contributed nothing. Such is not the law. It is true that he is only liable for his proper share of such indebtedness existing at the time of his transfer, but he is liable for that share. The question next in order is, what is that share?

7. His liability, like that of the present stockholder, is only for the payment of the balance of the indebtedness after the corporate assets have been exhausted. He is therefore entitled, as well as other stockholders, to the benefit of the 29 per cent. in dividends realized from the corporate assets. Then, before his share of the indebtedness existing when he transferred his stock can be ascer-

tained, the 29 per cent. must be deducted from such indebtedness, and interest to date of judgment added to the balance.

8. Again, such transferror is not liable for debts which existed at the time of his transfer, but have since been paid. He is only liable for debts which existed at the time of his transfer, and still exist. The deposits of a bank are being constantly drawn out, and new deposits made. The debts are therefore being constantly paid, and new debts incurred. Of the debts of a bank of deposit which exist to-day, there are usually very few which existed a year ago. So it was in this case.

It appears by Schedule A that, of the debts which existed at the time of the assignment, less and less existed as we go back through the year ending with the assignment; so that, the earlier in the year the transfer of stock was made, the less the amount of indebtedness on which the transferror can be held liable. It also follows that hardly any two transferrors will be liable on the same amount of indebtedness. All of these conditions complicate the question of what part of such indebtedness existing at the time of his transfer (after deducting the 29 per cent. of dividends, and adding interest) the transferror should pay. The part for which he can be held liable should be to the whole of such balance, in the ratio which his stock bears to all the stock of all solvent stockholders, both present and prior, contributing to the satisfaction of this same balance; not exceeding, of course, the amount of the judgment against him. See Harpold v. Stobart, 46 Ohio St. 397, 21 N. E. 637.

But it will be observed that transferrors (of other stock), whose transfers are prior to his, will contribute on only a part of this same balance, because, as before stated, the earlier the transfer the less the amount of the indebtedness on which the transferror is liable. Of course, all transferrors (of other stock) whose transfers are subsequent to his will contribute on this same balance, and more, too, because, as we have seen, the later the transfer, the greater the amount of the indebtedness on which the transferror is liable. It is also true that the present stockholders will contribute on this same balance, because they must contribute on the whole, of which this is only a part.

Then, for the purpose of forming the proportion by which to ascertain the part of such balance that he should pay, the stock (or

liability) of such present, solvent stockholders, and the stock (or liability) of such solvent, contributing transferrors, whose transfers are subsequent to his, stand on the same footing; but the stock (or liability) of such prior, solvent, and contributing transferrors does not, for the reason, as stated, that each contributes only on a part of such balance of indebtedness, and therefore only a corresponding part of the stock (or liability) of each should be taken into consideration.

The part of such balance which the particular transferror should pay is to the whole of such balance as his stock (or liability) is to the stock (or liability) of such present stockholders, plus the stock (or liability) of such subsequent stockholders, and his own stock (or liability), plus a proportionate part of the stock (or liability) of each of such prior stockholders, corresponding to the proportionate part which the indebtedness on which he must contribute is of the indebtedness on which the transferror in question must contribute.

For instance, supposing that the total amount of corporate indebtedness, after exhausting the assets, is $100,000; the part of this indebtedness which existed at the time the transferror, A., transferred his stock, was $40,000; the part which existed when the prior transferror, B., transferred other stock was $20,000; and the part which existed when the still prior transferror, C., transferred still other stock, was $10,000; and that all of these transfers were within the year before the bank failed; that the judgments against the present stockholders amounted to $250,000, against the transferrors A., B., and C., to $20,000 each; and, besides, there were judgments against other transferrors subsequent to A., on other stock. Now, suppose that, when the first assessment was made on the judgment against the present stockholders, $100,000 of this judgment responded to the assessment, and $150,000 proved uncollectible; that there was no secondary liability for $50,000 of this $150,000, the stockholders against whom the judgment for the same was entered having held their stock for more than a year before the failure of the bank; but on the other $100,000 of uncollectible judgment there was the secondary liability of the transferrors A., B., and C., amounting to $60,000, and also of the transferrors prior to A., as aforesaid, amounting to $40,000. A 40 per cent. assessment on the $250,000 would pay the $100,000 due if none of the stockholders

proved insolvent, and this assessment was made; but, as appears, this assessment was only collected on $100,000 of the judgment, so that only $40,000 was realized, and another assessment must be made for $60,000 more.

Let us now proceed to assess A. on his secondary liability. He can only be required to pay on the $40,000 indebtedness which existed when he transferred his stock. The portion of this which he shall pay is to the whole $40,000 as the judgment against him ($20,000) is to the judgment (of $100,000) against the present solvent stockholders, plus the judgment against him ($20,000) and the transferrors subsequent to him ($40,000), plus one-half the judgment of $20,000 against the prior transferror B. ($10,000), and one-fourth the judgment of $20,000 against the prior transferror C. ($5,000). Adding all of these last items together, and transposing the couplets of the proportion, we have: $175,000: $20,000 = $40,000: ———. This gives $4,571.42 as A.'s assessment. The reason we took only one-half of the judgment against B. is because the amount of the indebtedness existing when B. transferred his stock is $20,000, or one-half of the $40,000 of indebtedness which existed when A. transferred his stock; and in the same way we took only one-fourth of the judgment against C., because only one-fourth, or $10,000, of this $40,000 of indebtedness, existed when he transferred his stock.

In the same way, we must assess B. and C. and each of the other transferrors who must respond to this assessment by reason of the failure of his transferee to respond to the first assessment. The amounts thus assessed against each of these transferrors is then added together, and deducted from the $60,000 yet to be collected, and an assessment for the balance is then made on the present solvent stockholders pro rata. If any one so assessed is found execution proof, the court may forthwith assess the transferror answerable for him, or may defer doing so until the next general assessment. The latter will usually be the better plan, because on this second assessment (the first against the transferrors) several of the transferrors so assessed may be found execution proof, with no one answerable for them, or with prior transferrors answerable only in smaller amounts.

The court must use its discretion as to the order in which it will now proceed. It may make a third general assessment, or it may

continue to follow up the transferrors answerable for transferees who fail to respond, one after another, in the order of their liability, until it has run down all of them, or as many as it deems practicable, —and, if sufficient is not realized thereby, then order a third assessment on all the present solvent stockholders, and on all the solvent transferrors who have now become answerable by reason of the failure of their transferees to respond, and so on. The transferrors can never be assessed all alike, each for a specified per cent. of the judgment against him, as the present stockholders must be. But the proportion which each transferror must pay of the indebtedness so existing at the time of his transfer must always be the proportion which his stock is of the stock of all the contributors to the same indebtedness, plus a part of the stock contributing to a part of the same indebtedness, which part of such stock corresponds to the part of such indebtedness to which it so contributes, all as hereinbefore explained. Then the only reason why there can be more than one assessment on the secondary liability of a transferror is because, after the last assessment on him, other contributors, or expected contributors, taken into consideration in determining the portion which he should pay (of the indebtedness so existing at the time of his transfer), have since been found execution proof, so that the portion which he should pay is, in fact, larger than it was supposed to be. Of course, in making a second or third assessment against him, the amount collected on all the prior assessments against him must be deducted from such portion, ascertained as aforesaid.

9. As before stated, the amounts collected from each transferror must be put into the common fund, and distributed ratably among all the creditors. If the amount collected from a particular transferror was applied exclusively for the benefit of the creditors whose claims existed at the time of his transfer, these creditors would receive more when the present stockholder failed to respond, and the transferror did so, than they would receive if the present stockholder had responded. Why should these particular creditors receive more when the amount contributed came from him who is only secondarily liable therefor than if it came from him who is primarily liable therefor?

10. It is true that the utmost amount that can be assessed against the transferror of stock, and collected from him under the above method, may not exhaust the judgment against him, although all the judgment against the present, solvent stockholders has been exhausted, and a part of the corporate indebtedness still remains unpaid. But this results from the fact that the transferror is not liable on as much indebtedness as the present stockholders are. He cannot, by any system of marshaling of assets or contribution on liabilities which the court may devise, be made to contribute either directly or indirectly on account of the debts incurred after he made his transfer, or debts which existed at that time, and have since been paid.

11. The claim that it is unconstitutional for the legislature to impose this statutory liability on the stockholders of banks not of issue has been fully disposed of in Allen v. Walsh, 25 Minn. 543, 551.

12. Until about five weeks before the bank closed its doors, it had been in the habit of issuing only demand certificates of deposit to its depositors; but after April 11, 1893, it commenced to take up these certificates when offered, and issue time certificates in place of them, and quite a number of changes of this character took place before it closed its doors. Before these changes were made in the form of the certificates, certain of the appellant transferrors had transferred their stock, and now contend that they were mere sureties for the payment of the indebtedness so extended, and that such extension released them from liability on such indebtedness. It is not necessary to consider this point. It does not appear that these extensions were made without the consent of these appellants, and, even if they had become mere sureties, the burden is on them to show that the extensions were so made. Washington Slate Co. v. Burdick, 60 Minn. 270, 62 N. W. 285.

13. As to the defendant Henry A. Stimson, the court found that he was a stockholder holding $13,000 in stock until April 22, 1893, when he transferred the same to George B. Shepherd,

"By whom said stock was on the same date assigned to the Citizens' Bank, no entry of the assignment by Stimson to Shepherd, or of Shepherd to the bank, appearing on the books of the bank."

As a conclusion of law on this finding, the court held, in effect, that no one but the bank itself is primarily liable on this stock, and

that Stimson is liable only as a transferror, who had transferred his stock to the bank on April 22, 1893. Some of the other appellants assign this as error. In our opinion, the point is well taken. The transfer from Stimson was never entered on the books of the bank, so that, as to the creditors, he continued to be a stockholder up to the time the bank closed its doors, and should be charged as a present stockholder.

14. The court found that on and prior to December 27, 1892, Elwood S. Corser was the owner of $5,000 of stock, and on that day transferred it to Hill, Sons & Co. (a partnership), who on January 6, 1893, transferred it to Henry Hill, who on the same day transferred it to George W. Jenks, who transferred it on July 7, 1893, to George B. Shepherd, and that all these transfers except the one to Jenks were entered on the books of the bank; that the transfer from Corser to Hill, Sons & Co. was in pledge for the debt of Corser, but the fact that it was such pledge did not appear on the books of the bank; and that on January 6, aforesaid, this stock was sold on the pledge by Hill, Sons & Co. to Henry Hill.

Appellants Hill, Sons & Co. insist that, under these circumstances, they, being in fact mere pledgees, are only liable as transferrors for the debts still existing, which were actually incurred during the time that they held their stock, and not for those debts which existed prior to the time that the stock was transferred to them by Corser; that a court of equity ought not to hold them for the latter debts, the holders of which never gave credit on the faith of the responsibility of these appellants. If we were to adopt this theory, very many stockholders might find something in the contract by which they acquired the stock which would make it inequitable to enforce the stockholders' liability against them, and by which they would attempt to throw most of the liability on their predecessors. Appellants have voluntarily made themselves stockholders on the books of the bank. The statute prescribes the liability which they thereby incurred, and we cannot release them from that liability. If they have equities against Corser, they must pursue those equities outside of this proceeding.

15. It is further found by the court that the transfer from Hill to Jenks was not entered on the books of the bank, but that on the books this transfer appears to have been from Hill to Shepherd on

July 7, 1893, the day before the assignment; so that Hill appears on the books to have been the holder of this stock from January 6 to July 7, 1893. The court allowed Hill to file and serve a cross bill against Jenks (who was already a party to the suit by reason of his relations to other stock). Jenks is in default for want of an answer to the cross bill. Appellant Hill assigns as error the failure of the court to order any judgment against Jenks on account of this stock, and contends that, as between him and Jenks, the latter is primarily liable on the stock, even though he failed to register the transfer to him from the former.

We need not consider whether or not, under these circumstances, Jenks would, at the election of the creditors, be liable directly to them. See Basting v. Northern Trust Co., 61 Minn. 311, 63 N. W. 721. We are satisfied that, in any event, the creditors need not undertake to enforce such liability against Jenks, or accept the benefit of any such attempted enforcement of the same by Hill. They are entitled to look solely to the liability of the persons who appear by the books to have been stockholders. However, under the circumstances, we see no objection to Hill retaining his present hold on Jenks for the purpose of compelling contribution by the latter in this action for any sum which the former may be compelled to pay on the judgment against him herein, after he has paid the same.

16. Several of the appellant stockholders are also creditors of the bank, and their claims have been allowed herein. In the eleventh conclusion of law, the court declares the judgment against each of these stockholders to be a lien on the sum so due him from the bank, which lien shall stand as security for the payment of the judgment against him. No complaint is made as to this, but it is further provided that the sums "realized under or by virtue of this judgment for or on behalf of their said claims shall be applied pro tanto toward the payment of judgments as to them, and distributed among those claimants against whom no judgment is herein rendered, ratably as hereinbefore provided."

These appellants contend that the above-quoted provision will compel them to pay the judgments against them in full, but will not permit them to participate as creditors in the funds collected by the receiver; while respondent contends that this provision means that the sums collected from any source, applicable to the claims of those

creditors, shall not be applied thereto, but shall, instead, be credited on the judgment against them, and distributed among other creditors.

This provision of the conclusion of law is so ambiguous that we are unable to tell exactly what it does mean, and it should be stricken out. The first part of the conclusion of law is proper, and to it should be added a provision requiring each of these stockholders to pay all assessments on the judgment against him in full, until so much is paid that the court is fully satisfied that the dividend coming to him on his claim as creditor will fully pay the balance that will be due from him on the further assessments on the judgment against him, when the court may order the collection of further assessments against him stayed, and, on distribution, the dividend due him may be set off against these assessments.

17. The court finds that two of the nonresident stockholders who have not been made parties to the action were at the time of trial, and for a year prior thereto had been, the owners of real property within this state, the property of one being of the value of $3,200, and that of the other of the value of $1,800;

"That application that the said parties be served as defendants by attachment was not made until the trial of this cause, on the 16th day of January, 1896; and that neither the plaintiff nor his attorneys had any knowledge of the possession of property within the jurisdiction of this court by the said parties until the 7th day of January, 1896."

It appears by the bill of exceptions or statement filed as such that, on the trial, "defendants objected to the entry of judgment herein until the court should acquire jurisdiction by attachment of the property" above mentioned of these two stockholders. The court made no ruling on the objection at the time, and no exception appears to have been taken.

Some of the appellants contend:

"(1) That the situation is analogous to one where resident stockholders, able to respond to the amounts above mentioned, have not been brought in, and that judgment should await the acquiring of jurisdiction; or (2) that, in determining the liability of stockholders, these nonresident stockholders should, to the extent of their property situate within the jurisdiction of the court, be regarded as bearing their proportion of liability, within the meaning of the rule laid down in Clarke v. Cold Spring O. H. Co., supra."

The objection here relied on was not made before the trial, but in the midst of it. In fact, in the connection in which the objection is stated in the bill of exceptions, it would seem to have been made after the evidence was closed, and before the argument of counsel. It also appears by the same that the trial was commenced on January 13, only four days after the day on which plaintiff discovered this property. It nowhere appears that plaintiff or the other creditors were negligent in failing to discover the property at an earlier date. It is well settled that the failure to join a necessary party defendant is excused if he is a nonresident, over whose person jurisdiction cannot be obtained. Appellants have cited to us no authority holding that this rule is changed by the fact that the nonresident has property within the jurisdiction which may be seized by attachment, and it does not seem to us that any plea in abatement would lie in such a case. But it is not necessary to decide that point. In the case of Clarke v. Cold Spring O. H. Co., supra, there was a defect of parties defendant, stockholders, who were residents of this state. It has been held that in proceedings in equity the chancellor may, in his discretion and of his own motion, at the hearing, continue or dismiss the proceeding for want of necessary parties defendant. Hawes, Parties, § 102; Goodman v. Benham, 16 Ala. 625, 631; Van Keuren v. McLaughlin, 21 N. J. Eq. 163; Schwoerer v. Boylston M. Assn., 99 Mass. 285.

Conceding that, under our code practice, the objection of want of necessary parties is waived by failing to present it by demurrer or answer, it does not follow that the plaintiff is entitled to any greater relief against those made defendants than he would be if he had brought in the other necessary parties; and this is all that was decided in the case of Clarke v. Cold Spring O. H. Co. Conceding, without deciding, that this property should be regarded as contributing to the payment of creditors, and be charged to them accordingly, if plaintiff or the other creditors had discovered the property in time to have attached and condemned it, so that, without delaying the trial of this action, it could be made by the decree entered in such trial so to contribute, still it was not discovered in time, or any earlier than four days before the trial. But even at that late day the court, in its discretion, might, on the motion of defendants or some of them, have compelled the plaintiff or other creditors to

attach the property, and proceed to condemn it; and, if condemned too late to be applied directly in the payment of the creditors, it or its proceeds might, after the creditors were paid, be made to contribute its share to repay those stockholders who had paid more than their share.

18. Some of the appellants contend that while the creditors are entitled to recover the amount of their claims, with interest and statutory costs and disbursements, from the stockholders, the latter cannot be required to pay any additional amount of costs and expenses. We cannot so hold. The statute provides for the appointment of a receiver, and this implies that his expenses may be recovered in addition to the above amounts, not exceeding, of course, the amount of the statutory liability of the stockholders.

19. Some of the stockholders, appealing from orders denying their motions for a new trial, and more, appealing from the judgment, raise the point that the judgment entered is not against all the stockholders served in the action, and found liable by the court. The court did not order judgment to be so entered, and those appealing from such order appealed before the judgment was entered.

Waiving the question whether or not, under these circumstances, any of these appellants are in position to raise the point, we are of the opinion that the liability of the stockholders is not a joint liability, but a several one; so that the doctrine of the case of Davison v. Harmon, 65 Minn. 402, 67 N. W. 1015, cited by appellants, does not apply, and the entry of judgment against some of the defendants does not have the effect of releasing the others.

But, because the stockholders' liability is not joint, but several, it does not follow that a single creditor should be allowed to maintain an action against a single stockholder.

As pointed out in National New Haven Bank v. Northwestern Guaranty Loan Co., 61 Minn. 375, 63 N. W. 1079, this liability produces only a limited fund, which a few of the creditors might exhaust, leaving nothing for the other creditors. Such a result is not in accordance with the character of the creditors' rights. They are tenants in common in the fund, and, in order to ascertain how much of it belongs to any one creditor, it is necessary to go into a court of equity, where this can be determined, and the fund divided. But, when the parties are once in a court of equity, they must comply

with other rules of that court, so that, even though the stockholders' liability is several, the court will, in the first instance, enforce contribution as far as practicable in enforcing such liability, and will not compel one or a few of the solvent stockholders to pay all the corporate debts, while other solvent stockholders within the jurisdiction pay nothing. It is true that the rights and equities of all the parties should be worked out in a judgment which is, in its nature, one and entire, but it is not necessary that the whole of this judgment should be entered at one time. A judgment may be entered in an equitable proceeding like this, and subsequently a supplemental judgment, referring to the former judgment, and declaring that it is a part of the same, for the purpose of enforcing equities or adjusting rights arising between parties named in the one judgment and those named in the other.

20. Some of the appellants raise the point that in other respects the judgment varies materially in its provisions from the judgment ordered by the court. No application has been made to the court below to correct the judgment and make it conform to the order. The error is that of the clerk, and not that of the court, and therefore appellants are not in position to raise the point. Bank of Commerce v. Smith, 57 Minn. 376, 59 N. W. 311.

21. The twelfth and thirteenth conclusions of law are proper. They provide for judgments of contribution in favor of those stockholders who contribute more than their share, and against those who contribute less, and for the final adjustment of the rights and liabilities of the parties after the receiver has collected sufficient to pay the corporate debts, costs, and expenses, or has collected as much as he is able.

22. By the third finding, the court finds that Julia F. Hawley was a stockholder at the time the bank assigned, was made a party defendant to this action, and thereafter died, leaving no property within the jurisdiction of the court. Under these circumstances, Frank A. Hawley, who transferred to her, should, on the first assessment, be made to contribute on the amount of indebtedness existing at the time of his transfer.

This disposes of all the points raised, and one or two that were not raised. It is ordered that the judgment herein and all the conclusions of law be set aside. We will, before remanding the case, en-

deavor to frame new conclusions of law, and an order for judgment in accordance with this opinion; and to that end would request counsel to add up each of the columns in Schedule A, from the amount deduct 29 per cent. thereof, to the balance add interest to date, and present the result to us in the form of a table, as a substitute for Schedule A.

The following opinion was filed January 22, 1897:

CANTY, J.   The opinion having been heretofore filed in this action, we will, after adding a few remarks, proceed to close up this case.

After further reflection, we are of the opinion that, instead of wholly setting aside the judgment and conclusions of law, we should modify the same.   This will leave the judgment to stand so far as it adjudges the maximum liability of each stockholder against whom it was entered, and will save redocketing the judgment against them in the court below, and to this extent the order made at the close of said opinion is modified.   As no judgment has yet been entered against those stockholders who appealed from orders denying their motions for a new trial, some special provisions are made as to them in the seventeenth division of the following conclusions of law.   In the third division of said conclusions of law are enumerated several transferrors of stock, who, like Frank A. Hawley, mentioned in the twenty-second division of said opinion, must be assessed on the first assessment on the judgment, they having transferred their stock to the bank itself, on the respective dates mentioned; the bank appearing to be the owner of the stock at the time of its failure, and no question having been raised as to the legality of such transfers.

It is ordered that the conclusions of law be modified so as to read as follows, and the judgment entered be modified accordingly, and entered accordingly, against those defendants against whom no judgment has yet been entered, viz.:

"As conclusions of law, the court finds:

"That plaintiff and the other creditors named in Schedule A, attached to the findings of fact herein, are entitled to judgment adjudging and decreeing:

"(1) That there is due from said Citizens' Bank to plaintiff and each of said creditors seventy-one (71) per cent. of the sum set opposite his name in column one (1) of said Schedule A, together with interest thereon since July 8, 1893.

"(2) That said plaintiff and said other creditors recover in the manner hereinafter specified from each of the following named persons, present stockholders in said defendant corporation, the amount set opposite his, her, or their name, respectively, as follows, to wit:

| | | |
|---|---|---|
| Charles H. Prior | Two Thousand Dollars. | ($ 2,000.) |
| J. U. Barnes | Two Thousand Dollars. | ($ 2,000.) |
| Henry A. Stimson | Twenty-Six Thousand Dollars. | ($26,000.) |
| Nathaniel R. Thompson | Eight Thousand Dollars. | ($ 8,000.) |
| Nelson F. Griswold | Five Thousand Dollars. | ($ 5,000.) |
| Seallum Gates | Twenty-One Thousand Dollars. | ($21,000.) |
| Louisa B. Gates | Eight Thousand Eight Hundred Dollars. | ($ 8,800.) |
| Mary Gates | Eight Hundred Dollars. | ($ 800.) |
| W. S. Gates | One Thousand Dollars. | ($ 1,000.) |
| Edith McMillan | One Thousand Six Hundred Dollars. | ($ 1,600.) |
| F. S. McDonald | Four Hundred Dollars. | ($ 400.) |
| Mary S. Roberts, as executrix of the last will and testament of Nathan H. Roberts, deceased | One Thousand Dollars. | ($ 1,000.) |
| John T. Fanning | One Thousand Dollars. | ($ 1,000.) |
| Wm. Moneypenny, Jr., Henry E. Pence, and John W. See, as executors of the last will and testament of John W. Pence, deceased | Ten Thousand Dollars. | ($10,000.) |
| H. N. Peck | Four Hundred Dollars. | ($ 400.) |
| Robert D. Russell | Two Thousand Dollars. | ($ 2,000.) |
| Levi L. Cook | Twenty-Five Thousand Dollars. | ($25,000.) |
| Sarah P. Crocker | Eighteen Thousand Dollars. | ($18,000.) |
| John Litle | Ten Thousand Dollars. | ($10,000.) |
| Edward T. Pomeroy | Five Thousand Dollars. | ($ 5,000.) |
| Lydia T. Pomeroy | Four Thousand Dollars. | ($ 4,000.) |
| Irene E. Hale | Three Thousand Dollars. | ($ 3,000.) |
| Wm. A. Barnes | Fourteen Thousand Dollars. | ($14,000.) |
| Orasmus C. Merrill | One Thousand Dollars. | ($ 1,000.) |
| Sarah A. Gorton | One Thousand Dollars. | ($ 1,000.) |
| Otis M. Humphrey | Twenty-Four Thousand Dollars. | ($24,000.) |
| Charles A. Bovey | Four Thousand Dollars. | ($ 4,000.) |
| George Huhn | One Thousand Dollars. | ($ 1,000.) |
| James F. Bassett | Two Thousand Four Hundred Dollars. | ($ 2,400.) |
| Chris Hanke | Ten Thousand Dollars. | ($10,000.) |
| George A. Crocker | Four Thousand Dollars. | ($ 4,000.) |
| Edson S. Woodworth | Two Thousand Dollars. | ($ 2,000.) |
| Wilbur F. Decker | Two Thousand Dollars. | ($ 2,000.) |
| David W. Edwards | Two Thousand Dollars. | ($ 2,000.) |
| Grace L. Humphrey | Two Thousand Dollars. | ($ 2,000.) |
| L. M. Drake | Nine Thousand Dollars. | ($ 9,000.) |
| Susan M. Drake | Nine Thousand Dollars. | ($ 9,000.) |
| Anson P. Atterbury | Ten Thousand Dollars. | ($10,000.) |
| Mechanics' Savings Bank of Providence, R. I. | Ten Thousand Dollars. | ($10,000.) |
| Woonsocket Institution for Savings | Ten Thousand Dollars. | ($10,000.) |
| Travellers' Insurance Co. | Ten Thousand Dollars. | ($10,000.) |
| George C. Campbell | Six Thousand Dollars. | ($ 6,000.) |
| George W. Jenks | Fourteen Thousand Four Hundred Dollars. | ($14,400.) |
| George B. Shepherd | Fourteen Thousand Dollars. | ($14,000.) |

"(3) That plaintiff and said other creditors recover in the manner hereinafter specified, from each of the following named persons, the sum set opposite his or her name, with reference to the date set opposite such name, to wit:

| | | | |
|---|---|---|---|
| Frank A. Hawley....Four Thousand Six Hundred Dollars. | ($ 4,600.) | June 24th, 1893. |
| George B. Shepherd..Twelve Thousand Dollars. | ($12,000.) | April 22nd, 1893. |
| "    "    "    ..Twenty Thousand Dollars. | ($20,000.) | March 25th, 1893. |
| "    "    "    ..Sixty-Seven Thousand Six Hundred Dollars. | ($67,600.) | March 23rd, 1893. |
| Louise M. Shepherd...Four Hundred Dollars. | ($  400.) | March 23rd, 1893. |
| Lucy S. Hale........One Thousand Dollars. | ($ 1,000.) | March 15th, 1893. |

—"Each of said persons being a transferror at the date set opposite his or her name, with no one primarily liable before him or her on the same stock.

"(4) The first person mentioned below each of the following lines drawn across the page is one of the persons hereinbefore named in division two (2) of this judgment, and is primarily liable for the amount set opposite his name, as adjudged in said division two (2). The next person named below each of said lines is liable for the amount set opposite his name, secondarily to the person first named, as aforesaid. The person, if any, whose name is placed third below such line (and above the next line), is liable for the amount set opposite his name, secondarily to the person first named and the person second named, as aforesaid. The person, if any, whose name is placed fourth below such line (and above the next line), is liable for the amount set opposite his name, secondarily to the persons named first, second, and third, as aforesaid, each of said persons being liable for the same amount in the order aforesaid; and each, after the first, being a transferror of stock on the date set opposite his name, is secondarily liable as of such date, as hereinafter provided. Therefore, be it adjudged and decreed that plaintiff and said other creditors recover in the manner hereinafter provided from each of said persons secondarily liable, as aforesaid, the amount set opposite his name, as follows, to wit:

| | | | |
|---|---|---|---|
| George B. Shepherd.... | One Thousand Dollars. | ($ 1,000.) | Primarily Liable. |
| Clement D. Grassett.... | One Thousand Dollars. | ($ 1,000.) | July 7th, 1893. |
| James T. McQuaig..... | One Thousand Dollars. | ($ 1,000.) | March 9th, 1893. |
| | | | |
| Charles A. Bovey ...... | Two Thousand Dollars. | ($ 2,000.) | Primarily Liable. |
| Walter N. Carroll...... | Two Thousand Dollars. | ($ 2,000.) | July 6th, 1893. |
| | | | |
| George W. Jenks...... | Two Thousand Dollars. | ($ 2,000.) | Primarily Liable. |
| J. A. Wolverton....... | Two Thousand Dollars. | ($ 2,000.) | Dec. 30th, 1892. |
| | | | |
| John T. Fanning....... | One Thousand Dollars. | ($ 1,000.) | Primarily Liable. |
| George W. Jenks...... | One Thousand Dollars. | ($ 1,000.) | Oct. 7th, 1892. |
| George Huhn ......... | One Thousand Dollars. | ($ 1,000.) | July 15th, 1892. |

| | | | |
|---|---|---|---|
| George B. Shepherd.... | Ten Thousand Dollars. | ($10,000.) | Primarily Liable. |
| Henry Hill ........... | Ten Thousand Dollars. | ($10,000.) | July 7th, 1893. |
| Hill, Sons & Co........ | Ten Thousand Dollars. | ($10,000.) | Jan. 6th, 1893. |
| Elwood S. Corser...... | Ten Thousand Dollars. | ($10,000.) | Dec. 27th, 1892. |
| George W. Jenks...... | Four Hundred Dollars. | ($ 400.) | Primarily Liable. |
| C. H. Ross........... | Four Hundred Dollars. | ($ 400.) | Jan. 20th, 1893. |
| Annie L. Mearkle...... | Four Hundred Dollars. | ($ 400.) | Dec. 17th, 1892. |
| Wilbur F. Decker...... | Two Thousand Dollars. | ($ 2,000.) | Primarily Liable. |
| Edson S. Woodworth.. | Two Thousand Dollars. | ($ 2,000.) | March 7th, 1893. |
| David W. Edwards..... | One Thousand Dollars. | ($ 1,000.) | Primarily Liable. |
| G. E. Ellery........... | One Thousand Dollars. | ($ 1,000.) | March 25th, 1893. |
| Edson S. Woodworth... | One Thousand Dollars. | ($ 1,000.) | March 15th, 1893. |
| David W. Edwards.... | One Thousand Dollars. | ($ 1,000.) | Primarily Liable. |
| Edson S. Woodworth... | One Thousand Dollars. | ($ 1,000.) | March 25th, 1893. |
| Grace L. Humphrey ... | Two Thousand Dollars. | ($ 2,000.) | Primarily Liable. |
| Otis L. Humphrey...... | Two Thousand Dollars. | ($ 2,000.) | Jan. 9th, 1893. |
| George W. Jenks...... | One Thousand Dollars. | ($ 1,000.) | Primarily Liable. |
| C. H. Ross........... | One Thousand Dollars. | ($ 1,000.) | Dec. 30th, 1892. |
| Wm. G. Crocker........ | One Thousand Dollars. | ($ 1,000.) | Oct. 17th, 1892. |
| Henry A. Barnes...... | One Thousand Dollars. | ($ 1,000.) | July 9th, 1892. |
| Wm. Harder .......... | One Thousand Dollars. | ($ 1,000.) | Primarily Liable. |
| George W. Jenks...... | One Thousand Dollars. | ($ 1,000.) | Feb. 14th, 1893. |
| Wm. G. Crocker...... | One Thousand Dollars. | ($ 1,000.) | Oct. 17th, 1892. |
| Henry A. Barnes ....... | One Thousand Dollars. | ($ 1,000.) | July 9th, 1892. |
| George W. Jenks....... | Four Thousand Dollars. | ($ 4,000.) | Primarily Liable. |
| John T. Fanning....... | Four Thousand Dollars. | ($ 4,000.) | Dec. 30th, 1892. |
| Nathan M. Barnes...... | Four Thousand Dollars. | ($ 4,000.) | Oct. 12th, 1892. |
| George W. Jenks....... C. H. Chadbourn & Sons, a co-partnership, and Charles H. Chadbourn, Charles N. Chadbourn, & Rodney W. Chadbourn .............. | Two Thousand Dollars. Two Thousand Dollars. | ($ 2,000.) ($ 2,000.) | Primarily Liable. Jan. 18th, 1893. |
| George W. Jenks....... C. H. Chadbourn & Sons, a co-partnership, and Charles H. Chadbourn, Charles N. Chadbourn, & Rodney W. Chadbourn .............. | Three Thousand Dollars. Three Thousand Dollars. | ($ 3,000.) ($ 3,000.) | Primarily Liable. Dec. 31st, 1892. |
| George C. Campbell.... | Six Thousand Dollars. | ($ 6,000.) | Primarily Liable. |
| George B. Shepherd.... | Six Thousand Dollars. | ($ 6,000.) | May 3rd, 1893. |

"(5) It is further adjudged and decreed that execution shall not issue on this judgment for the recovery of said amounts specified in divisions two (2), three (3), and four (4) of this judgment, except upon the order of the court in the manner hereinafter provided.

66 M.—33

"(6) It is further adjudged and decreed that the amount of the still existing indebtedness due said plaintiff and said other creditors, which existed at each of the following dates, respectively, with interest to the present time, is as follows:

| | |
|---|---:|
| July 7th and 8th, 1893 | $181,254 60 |
| June 24th, 1893 | 104,293 50 |
| May 3rd, 1893 | 93,525 39 |
| April 22nd, 1893 | 88,543 53 |
| March 25th, 1893 | 79,321 85 |
| March 23rd, 1893 | 79,036 73 |
| March 15th, 1893 | 77,665 69 |
| March 9th, 1893 | 77,250 03 |
| February 14th, 1893 | 72,367 15 |
| January 20th, 1893 | 70,261 32 |
| January 18th, 1893 | 69,689 31 |
| January 9th, 1893 | 64,011 42 |
| January 6th, 1893 | 61,861 07 |
| December 30th and 31st, 1892 | 61,609 37 |
| December 27th, 1892 | 61,480 89 |
| December 17th, 1892 | 60,435 95 |
| October 17th, 1892 | 50,499 25 |
| October 12th, 1892 | 47,926 48 |
| October 7th, 1892 | 47,699 31 |
| July 8th, 9th, and 15th, 1892 | 39,975 84 |

"(7) The amount for which execution shall issue against each transferror of stock named in divisions three (3) and four (4) of this judgment shall be a part of the indebtedness existing at the time he transferred his stock, which indebtedness appears in division six (6) of this judgment, and which time appears opposite his name in divisions three or four. Such part shall be to the whole of the indebtedness then existing, in the ratio that the liability set opposite his name in said division three (3) or four (4) bears to the liability set opposite the names of the solvent, or presumptively solvent, present stockholders named in division two (2) of this judgment, plus the liability set opposite the name of each of the solvent, or presumptively solvent, transferrors whose transfers were subsequent in date to his, as shown in said divisions three (3) and four (4), plus the liability set opposite his own name, as aforesaid, plus a proportionate part of the liability of each solvent, or presumptively solvent, transferror whose transfer is prior in date to his (the transferror in question), which proportionate part corresponds to (is equal to) the proportionate part which the indebtedness on which such prior transferror must contribute is of the indebtedness on which he (the transferror in question) must contribute.

"(8) The court shall first assess each transferror named in said division three (3), in the manner provided in said division seven (7); and, after deducting the sum of these assessments from the total amount due creditors, as adjudged in said division one (1), the balance shall by the court be apportioned pro rata amongst each of the present stockholders named in said division two (2), in proportion to the amount of liability placed opposite the name of each in that division, and execution shall issue accordingly.

"(9) If execution is returned unsatisfied in whole or in part, as to any of said persons against whom it was so issued, the court or judge may, in a similar manner, proceed to levy a second assessment.

"(a) In doing so, the court shall, in the manner provided by said division seven (7), assess each transferror named in said division four (4) secondarily liable, and answerable next in order for a present stockholder primarily liable, who has wholly or partly failed to respond on said first assessment.

"(b) The court shall also, in the manner provided by said division seven (7), assess a second time each of the transferrors named in said division three (3) found to be solvent, for the difference between what he paid on the first assessment and what he should pay on this assessment if he had failed to pay on the first assessment.

"(c) The court shall deduct the amount of all of said assessments levied under the foregoing subdivisions (a) and (b) from such balance remaining uncollected on such first assessment, and assess the remainder pro rata upon all of the present stockholders named in said division two (2), found to be solvent.

"(d) Execution shall be issued for each and all of said assessments.

"(e) If any of the persons assessed under said subdivision (a) aforesaid fail to respond, the court may, in its discretion, on the return of execution unsatisfied in whole or in part as to such person, assess, in the manner provided by said division seven (7), the person answerable next in order for him, as provided in said division four (4). And if the person so answerable fails to respond, on return of execution unsatisfied in whole or in part, as to him, the court may, in like manner, assess the person next answerable, and so on.

"(f) The court may, in a similar manner, and on like principles, proceed to make a third assessment, and so on.

"(10) Instead of proceeding to make such a second assessment, the court may, in its discretion, as supplemental to the first assessment, proceed, under said subdivision (a) or subdivisions (a) and (b), to assess those secondarily liable, and thereafter, if necessary, make a second general or more general assessment; or the court may, in its discretion, proceed in like manner before the third or the fourth assessment. But, on or before the final assessment, all of the transferrors named in said divisions three (3) and four (4) shall, on the principles herein laid down, be assessed for his full proper share of said corporate indebtedness, and the costs and disbursements hereinafter specified.

"(11) The court shall also levy on each judgment debtor the amount of costs and disbursements specially taxed against him. On such assessments as it is deemed most convenient, the court shall apportion, amongst the different judgment debtors herein, the amount of statutory costs and disbursements taxed against them generally, and the expenses of the receivership, as allowed by the court; and the same shall be so apportioned pro rata in proportion to the total amount of assessments levied against each of such judgment debtors.

"(12) As to each of those persons who is both judgment debtor

and judgment creditor herein, it is further adjudged and decreed that the judgment against him shall be, and hereby is declared to be, a lien on the amount due him as creditor, and he shall pay all assessments on the judgment against him until the court is satisfied that the dividend coming to him will fully pay the balance due from him on any further assessments on the judgment against him; and thereupon the court may stay the collection of such further assessments, and, on distribution, the dividend due him may be set off against such assessments, and any balance due to or from him ordered paid accordingly.

"(13) When all of said corporate indebtedness, costs, disbursements, and receivership expenses, for which the particular judgment debtor is liable, have been paid in full, and such judgment debtor has fully responded to all of the assessments so levied against him, the judgment against him shall be satisfied.

"(14) In no event shall any such judgment debtor be assessed for more than the amount of the judgment against him, as adjudged in said divisions two (2), three (3), and four (4), and interest thereon from the date of judgment, except for statutory costs and disbursements.

"(15) After said amount of corporate indebtedness, and interest thereon, and said costs and disbursements and receivership expenses, have been collected in full, or after all collectible liability hereon has been exhausted, a judgment of contribution may, on the order of the court, be entered herein in favor of those who have paid more than their share, and against those who have paid less than their share.

"(16) It is further adjudged and decreed that the court may, under this judgment, make any further order necessary for the furtherance of justice or equity, not inconsistent with this judgment or the opinion of the court herein; and it is further adjudged that if any property is levied on under any execution, and further assessments may be necessary, against the same judgment debtor, which may also be satisfied in whole or in part out of such property, the court may, in its discretion, stay sale on such execution, and, for the purpose of further assessments, consider the amount for which such execution was levied as collected, proceed to make another assessment, and, after the levy on the same property of an execution issued thereon, order one sale to take place on both or all of the executions so levied on such property.

"(17) It is further adjudged and decreed that as to all persons against whom judgment is given in divisions two (2), three (3), and four (4) of this judgment, and against whom no judgment was given in the original judgment herein, this judgment shall be considered as entered nunc pro tunc, as of the date of the original judgment, so that the maximum liability so adjudged against each of them shall draw interest from that date.

"Let judgment be entered accordingly."

It is so ordered.