## WILLIAM F. HUNT v. MICHAEL DORAN.[1]

June 24, 1904.

Nos. 13,883—(156).

**Liability of Stockholder—Findings.**

> Action by the receiver of an insolvent bank to enforce a stock liability against a stockholder who transferred his stock before any proceedings were instituted for the appointment of a receiver. *Held* that, as to the material facts found by the trial court, its findings are sustained by the pleadings and the evidence, and that its conclusion from such facts that this action is barred by the statute of limitations is correct.

Appeal by plaintiff from an order of the district court for Ramsey county, Olin B. Lewis, J., denying a motion for a new trial. Affirmed.

*James E. Trask,* for appellant.

*Durment & Moore* and *M. Doran, Jr.,* for respondent.

START, C. J.

Action by the receiver of the Allemannia Bank to enforce payment of the defendant's alleged liability as owner of ten shares of the capital stock of the bank. The alleged defense was that any action to enforce such liability was barred by the statute of limitations. The action was tried by the court without a jury, and findings of fact made. As a conclusion of law, judgment was directed for the defendant on the ground that the action was barred. The plaintiff appealed from an order denying his motion for a new trial.

The plaintiff's assignments of error challenge many of the findings of fact of the trial court on the ground that they are not sustained by the evidence. He also assigns errors as to the rulings of the court in the admission of evidence, and in denying defendant's motion to amend the findings. We find it necessary to consider only a limited number of the questions raised and discussed by plaintiff's counsel, for not all of the findings of fact made by the trial court are essential to support its conclusion. The general facts in reference to the Allemannia Bank —such as its failure, the appointment of receivers, and the termination

[1] Reported in 100 N. W. 222.

of the receivership proceedings, its reorganization, and the subsequent appointment of the plaintiff as its receiver—are set forth in the opinion in the case of Hunt v. Roosen, 87 Minn. 68, 91 N. W. 259, to which reference is here made.

The here material facts found by the court are substantially these: On October 10, 1892, the Allemannia Bank was a banking corporation duly organized under the laws of this state, and the defendant was then the owner of ten shares of its capital stock, which stood on the records of the bank in his name until October 19, 1896. On the day last named, the defendant, for value and in good faith, sold and assigned his stock, and it was then transferred upon the records of the bank, to the Local Investment Company, a corporation. There now remains unpaid of the indebtedness of the bank on the day of such transfer of the stock the sum of $15,000. On January 4, 1897, the bank became insolvent, and a receiver was appointed for it in proceedings duly had and taken pursuant to Laws 1895, p. 298, c. 145, who resigned, and two other receivers were appointed in his place. The receivers so appointed continued to act until May 26, 1898, when the bank was reorganized, and judgment to that effect entered in proper proceedings duly instituted in the district court. The assets of the bank then in the hands of the receivers were turned over to the bank pursuant to the judgment, with the consent of its creditors, and the receivership terminated, and the receivers discharged. Pending such receivership, and in course of a suit to enforce the liability of stockholders, the defendant paid the sum of $500 to the chairman of the reorganization committee, and the money, upon the reorganization of the bank, was turned over to it.

On June 9, 1900, the plaintiff, in a new action and proceeding, was appointed receiver of the bank, pursuant to Laws 1895, p. 298, c. 145, and April 3, 1901, the court made its order assessing each share of the stock of the bank to the amount of its par value. All other facts found by the trial court and all requested findings of fact are immaterial, in the view we take of this case. Of the findings we have recited, two are controlling. They are those which relate to the sale and transfer of the defendant's stock, and to the termination of the first receivership, and the turning over to the bank of all of the assets of the bank in the hands of the receivers with the consent of its creditors.

Each of these findings is sustained by the evidence. No serious ques-

tion is or can be made that the evidence does not sustain the finding to the effect that the first receivership was terminated, and all of the assets of the bank were, with the consent of the creditors, turned over to it, and the receivers discharged by the judgment and order of the court. In and by this judgment and order all the assets of the bank in the hands of the receivers were vested in the bank, and it was authorized and directed to reopen its doors for the regular transaction of the business of a bank of deposit, loan, and discount under the laws of the state. The receivers, upon making proof that they had, pursuant to the judgment, turned over to the bank all of its assets in their hands, were discharged by order of the court. This judgment and order appear from the record in this particular case to be valid—whatever may have been the fact in other cases—as to the bank and its creditors.

The objection to the finding as to the transfer of the defendant's stock is that the trial court was not authorized by the evidence to so find, in view of the facts admitted by the pleadings. The question, then, is not that the finding is not sustained by the evidence—there is no assignment of error to that effect—but that the finding is contrary to the admissions and allegations of the pleadings.

The complaint alleged that the defendant caused a pretended transfer of his stock to the Local Investment Company to be entered upon the books of the bank for the purpose of defrauding the creditors of the bank, and to evade his stock liability for their claims, and, further, that in fact the defendant never made any transfer of his stock to the Local Investment Company. The answer specifically denied all the allegations of fraud in the complaint, and affirmatively alleged that he, in good faith and for value, sold the stock and transferred and delivered the certificate to a party other than the Local Investment Company, and that such person was then solvent, and that he agreed to cause the stock to be transferred on the books of the bank from the name of the defendant, and that it was so transferred from his name on the books of the bank October 19, 1896. The plaintiff's point is that it is admitted by the pleadings that the defendant did not transfer his stock to the Local Investment Company. The defendant does not claim that he did, nor did the trial court so find.

What the court did find was that the stock was sold in good faith for value, and that the stock was transferred on the books of the bank

to the Local Investment Company. The certificate of the stock having been signed in blank, it may have been sold several times before it was transferred on the records to the Local Investment Company. The defendant was asked on the trial by his counsel to state to whom and for what consideration the transfer was made, the plaintiff objected, and the question was withdrawn. We hold that the finding is sustained by the evidence, and that it is not inconsistent with the admissions and allegations of the answer.

The only other finding of fact that it is necessary to refer to is the one relating to the payment of the $500 by the defendant in the suit of the receivers to enforce the liability of stockholders. The defendant moved the trial court to strike out this finding, and to substitute in lieu thereof a finding of fact to the effect that the $500 was paid by the defendant in the reorganization proceedings, and that he consented to such proceedings and to the judgment. This was refused, and the plaintiff here urges that the evidence is practically conclusive that the payment was so made, and that the defendant did so consent. It may be conceded that the evidence is such that the trial court might have so found, but it was not bound so to do. The plaintiff, in this connection, cites and relies on the case of Hunt v. Roosen, 87 Minn. 75, 91 N. W. 259. That case is not here in point, for in that case the defendant was a stockholder of the bank when the judgment was entered, while the defendant in this case was not a stockholder, but simply a transferror of stock since October 19, 1896. He was not a party to the proceedings, and had no voice in the management of the bank. The evidence sustains the finding as made, and it was not error to deny the proposed amendment.

Now, upon the facts found by the trial court to which we have referred, was the court justified in its conclusion of law that this action was barred? We answer the question in the affirmative.

After the defendant sold his stock, and it was transferred from his name on the books of the bank, he was no longer a stockholder. He then had no interest in the bank, or voice in its management, and its directors could not represent him. He, however, was liable for a limited time after the transfer to its creditors for the pro rata share of the then existing debts of the bank, after all of its assets were applied in payment of its debts. The time limitation was one year after the stock

was transferred from his name on the records of the bank. If within the year the bank became insolvent, and proceedings were commenced, under chapter 76, G. S. 1894, to sequestrate its property, the right of the creditors to enforce his stock liability would then be complete, and an action could be brought by the receiver in such proceeding to enforce such right at any time within six years thereafter. Harper v. Carroll, 62 Minn. 157, 64 N. W. 145; Harper v. Carroll, 66 Minn. 490, 69 N. W. 610, 1069. Such was the liability of the defendant, and it could not be extended or varied by any subsequent statute or judgment to which he did not consent. The action or proceeding for the sequestration of the assets of the bank, in which the plaintiff was appointed a receiver, having been commenced nearly four years after the transfer of defendant's stock, it necessarily follows that, unless effect can be given in this action to the first receivership proceedings, this action is barred, because the action to declare the insolvency of the bank and to wind up its affairs, in which the plaintiff was appointed receiver, was not commenced within one year after the transfer of defendant's stock.

We have attentively considered all of the reasons urged by the plaintiff why the termination of the first receivership proceedings, and the turning over to the bank of all of its assets in the hands of the receivers by the judgment of the court, and with the consent of the creditors, did not, as he claims, affect the defendant's liability on his stock.

Only two of the alleged reasons merit special consideration. The first is the claim that the bank was continuously insolvent from the time the stock was transferred up to the time of instituting the second receivership proceedings, and, further, that the reorganization proceedings and termination of the first receivership were to permit the bank to apply the assets to the payment of its debts, and that the only business done by it after the assets were turned over to it was to convert the assets into money to pay its debts. The mere continued insolvency of the bank, if it were a fact, is here immaterial. So also is the fact that the bank did no new business after its reorganization. The question is not what it did do, but what it was authorized to do, and whether it held its assets as owner free from any control of the court, or in place of the receivers in trust for creditors. The judgment expressly provided that the bank should reopen its doors for the regular trans-

action of the business of a bank of deposit, loan, and discount, under the laws of the state; and all the assets were thereby vested in the bank absolutely, and the receivers discharged. Thereafter the court had no more jurisdiction over the bank, its officers, its business, and its assets, than it had before the receivership proceedings were commenced. Nor did the court ever thereafter acquire such jurisdiction until the second receivership proceedings were commenced. So far as appears from the record in this particular case, there is absolutely no connection shown between the first and second receiverships.

The other claim is that the defendant consented to the judgment, which provided "that none of the stockholders, present or past, of said bank, shall in any way or to any extent be released from any existing liability by reason of the entry of this judgment." The short answer to this is that the trial court did not so find in this case. There is no connection whatever between the two receiverships, and this case stands precisely as if no other action had ever been commenced to wind up the affairs of the bank, except the one in which the plaintiff was appointed receiver. The termination of the first receivership, the turning back of the assets of the bank in the hands of the receivers to the bank as its absolute property, and the discharge of the receivers, all of which was done with the consent of the creditors, but without the consent of the defendant, was a waiver of any right to maintain any action against the defendant on his stock liability by virtue of the first receivership proceedings. This case, then, is simply one brought by a receiver appointed in proceedings commenced nearly four years after the defendant transferred his stock to enforce his liability thereon for the debts of the bank existing at the time of transfer. Clearly this action is barred by the one-year limitation, for the conditions which would permit the creditors to resort to the defendant's stock liability did not (the first receivership proceedings being eliminated) arise or exist within the year.

Order affirmed.