61 307
63 410
61 307
f65 254
65 334
s65 495
66 505

THEO. BASTING, Receiver, v. NORTHERN TRUST COMPANY.[1]

June 7, 1895.

Nos. 9503—(328).

**Transfer of Corporate Stock—Liability of Stockholder.**

*Held* that, upon the facts in this case, there was a sufficient transfer of stock upon the corporate books, and a sufficient mutual recognition by the corporation and the transferee of the relation of stockholder, to change the equitable ownership of the stock into a legal ownership, so as to make the transferee liable to the corporation for the payment of calls on the stock.

Appeal by plaintiff from an order of the district court for Hennepin county, Belden, J., denying a motion for a new trial. Reversed.

*Cobb & Wheelwright,* for appellant.

The Minneapolis Times Company, after the payment of the delinquent call by Nimocks, recognized defendant as one of the shareholders and waived the formalities of an actual transfer. The rule that a transferee of stock cannot be made liable for a call unless there be an actual transfer or registration on the books of the corporation is a rule adopted for the benefit and protection of the corporation, which may waive it. Cook, Stock & Stockh. § 258; Beach, Priv. Corp. § 131; Bank of Commerce v. Bank of Newport, 11 C. C. A. 484, 63 Fed. 898; Isham v. Buckingham, 49 N. Y. 216; Cutting v. Damerel, 88 N. Y. 410; Upton v. Burnham, 3 Biss. 431, 520, Fed. Cas. No. 16,798.

There was no duty on the Times Company to notify defendant when the delinquent call was paid by Nimocks. Defendant, after May 28, 1894, ratified and acquiesced in the act of the Times Company accepting and recognizing it as a stockholder. Slight mutual recognition of the relation of shareholder on the part of the corporation and purchaser of shares is sufficient to establish the relation. Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290; Upton v. Burnham, supra; McHose v. Wheeler, 45 Pa. St. 32. Defendant had no right to be present or represented at the meeting of June

[1] Reported in 63 N. W. 721.

4, 1894, except in the capacity of shareholder. Cook, Stock & Stockh. §§ 247, 596, 612.

*Carman N. Smith*, for respondent.

The action to recover a call against a transferee of stock is based on an implied promise, on the theory that the transfer works a novation. Until there is a transfer on the books, the transferee is not brought into privity with the corporation, and there is no novation. Cook, Stock & Stockh. §§ 256–258; Thomp. Liab. Stockh. §§ 177, 178; Beach, Priv. Corp. §§ 707–8, 125–6, 130–32; Morawetz, Priv. Corp. §§ 169, 170, 172; Webster v. Upton, 91 U. S. 65; Becher v. Wells F. M. Co., 1 McCrary, 62, 1 Fed. 276; Pullman v. Upton, 96 U. S. 328; Hawley v. Upton, 102 U. S. 314; Johnston v. Laflin, 103 U. S. 800; Simmons v. Hill, 96 Mo. 679; In re People's Live-Stock Ins. Co., 56 Minn. 180, 57 N. W. 468; Helm v. Swiggett, 12 Ind. 194; Brown v. Adams, 5 Biss. 181, Fed. Cas. No. 1,986; Turnbull v. Payson, 95 U. S. 418; Price v. Whitney, 28 Fed. 297; Magruder v. Colston, 44 Md. 349; In re Empire City Bank, 18 N. Y. 199; Rosevelt v. Brown, 11 N. Y. 148; Johnson v. Underhill, 52 N. Y. 203; Shellington v. Howland, 53 N. Y. 371; Dane v. Young, 61 Me. 160; Fowler v. Ludwig, 34 Me. 455; Powers v. Knapp, 71 Hun, 371, 25 N. Y. Supp. 19; Worrall v. Judson, 5 Barb. 210; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10; Joslyn v. St. Paul Distilling Co., 44 Minn. 183, 46 N. W. 337; Bank of Commerce v. Bank of Newport, 11 C. C. A. 484, 63 Fed. 898; McNeil v. Tenth N. Bank, 46 N. Y. 325; New York & N. H. R. Co. v. Schuyler, 34 N. Y. 30; Plumb v. Bank of Enterprise, 48 Kan. 484, 29 Pac. 699; Glenn v. Garth, 133 N. Y. 18, 30 N. E. 649, and 31 N. E. 344; Keyser v. Hitz, .133 U. S. 138, 10 Sup. Ct. 290; Topeka Mnfg. Co. v. Hale, 39 Kan. 23, 17 Pac. 601; Upton v. Hansbrough, 3 Biss. 417, Fed. Cas. No. 16,801; Upton v. Burnham, 3 Biss. 431, Fed. Cas. No. 16,798; Union Bank v. Laird, 2 Wheat. 390; Marlborough Mnfg. Co. v. Smith, 2 Conn. 579; Harpold v. Stobart, 46 Ohio St. 397, 21 N. E. 637. The books of the corporation, as against it, in the absence of fraud are conclusive evidence as to who are its stockholders. Morrill v. Little Falls Mnfg. Co., 53 Minn. 371, 55 N. W. 547; Lund v. Wheaton R. M. Co., 50 Minn. 36, 52 N. W. 268; Stanley v. Stanley, 26 Me. 191; Moore v. Jones, 3 Woods, 53, Fed. Cas. No. 9,769; Richmond

v. Irons, 121 U. S. 27, 7 Sup. Ct. 788; Galveston Hotel Co. v. Bolton, 46 Tex. 633.

MITCHELL, J. The plaintiff, as receiver of the Times Company, appointed in proceedings under G. S. 1894, § 5897, brought this action to recover a call on 75 shares of the capital stock of the insolvent corporation alleged to be owned by the defendant. The defendant denied that it was the owner of the stock. When plaintiff rested the court dismissed the action on the ground that the stock had never been transferred to defendant on the books of the corporation, and hence no relation of privity, such as to impose upon it the obligation of a legal stockholder, existed at the time the call was made. The correctness of this ruling is the only question presented by this appeal. The facts are practically undisputed.

The Times Company was organized under G. S. 1894, c. 34, tit. 2, § 2794 et seq. The statute, it will be remembered, provides that the stock of any such corporation shall be transferable only on the books of the company, and that a transfer shall not be valid, except as between the parties, until it is regularly entered on the books of the company, so far as to show the names of the persons by and to whom transferred, the numbers or other designation of the shares, and the date of the transfer; also that the books of the company shall be so kept as to show intelligibly the original stockholders, their respective interests, the amount which has been paid in on the shares, and all transfers thereof. G. S. 1894, §§ 2599, 2796, 2799.

This company kept no regular "stock book." It kept a "certificate book," containing printed certificates of stock, which, as occasion required, were filled out, signed by the proper officers, and then delivered to the subscribers. In this certificate book there was a stub opposite each certificate, on which was entered the name of the person to whom issued, the date of issue, and the amount or number of shares. When a certificate was surrendered and canceled, an entry of the fact was usually made on the corresponding stub, and the canceled certificate pasted into the book. It appears that the stock certificates were issued before the stock was paid for in full, and there was nothing in the certificate book to show the amount which had been paid on the shares. The method adopt-

ed by the company to show this fact was to open in its general ledger a "stock account" with each shareholder, showing the number of shares held by him, and in which he was charged with the amount of all calls made thereon, and credited with all sums paid on such calls.

One Nimocks having subscribed for 75 shares of the capital stock of the company, a certificate was issued to him, by the terms of which the stock was transferable only on the books of the company on surrender of the certificate. The usual entry or notation was made on the stub, showing the date and amount of the certificate, and the name of Nimocks as the person to whom it was issued. The company also opened in its ledger the usual stock account with him, as a shareholder. Subsequently the company made a "call" on the stock, which Nimocks failed to pay. In this condition of affairs the defendant, the trust company, upon an execution issued on a judgment in its favor against Nimocks, levied upon and sold the stock, became the purchaser at the execution sale, and received a certificate of sale from the sheriff.

The defendant had been informally advised that the Times Company claimed a lien on the stock for the unpaid call, and would not transfer the stock on its books to the defendant until this call was paid. Nevertheless, on November 15, 1892, the defendant served on the Times Company a notice that it was the owner of stock, as evidenced by the stock certificate indorsed by Nimocks, and by the sheriff's certificate of sale, and requiring the Times Company to transfer the stock to the defendant, on its books, and to issue to it a new certificate. This notice was accompanied by the stock certificate indorsed by Nimocks, and by the sheriff's certificate of sale. The Times Company declined to make the transfer at that time, but the court correctly states in its memorandum that "because of the incumbrance then resting on the stock, arising from the unpaid call theretofore made upon Nimocks, the defendant was not entitled to a compliance with its demand; and this was understood to be the reason, and the only reason, at the time, by both parties, for the refusal." The defendant made no offer to pay this call, but left the notice, together with the stock certificate and the sheriff's certificate of sale, with the defendant.

Matters rested thus until February, 1894, when the Times Com-

pany succeeded in collecting from Nimocks the amount due on the call referred to. Thereupon, and about the 21st of that month, it made in Nimocks' stock account (a copy of which is to be found on page 82 of the paper book) in the ledger the following entry: "C. A. Nimocks, under execution sale, sold to Northern Trust Co. 75 shares." No entry or memorandum of this sale was made on the certificate book, and the above was the only entry of the transfer ever made on the books of the company. It appears that this entry was first made in pencil, and afterwards in ink. There is some question, under the evidence, whether this change was made in February, or at some later day between that date and May 28 following; but we do not deem this question at all material.

The next thing done was that on May 28 the directors made a call (the one sued on) of 48½ per cent. on the stock, and on the same day called a special meeting of the stockholders, for June 4, to consider the financial condition of the company. Notice of the call and notice of this special meeting were both served on defendant at the same time. The only action of the defendant on receipt of these notices was as follows: The president of the defendant executed to its attorney a written authority or proxy to attend the special meeting of the stockholders, and "represent it," or "represent the interests of the company," but accompanied, as the president testified, with verbal instructions "not to represent it in a voting capacity, as a stockholder." The attorney attended the meeting, and, before it convened, made inquiries of the officers of the company, then present, as to its financial condition. The result of these inquiries was such that he decided not to present his proxy, or take any part in the meeting, and thereupon retired. Nothing further was done by either party until the plaintiff brought this action, in September, 1894.

It is generally stated in the books that, until a transfer is recorded in the transfer book of the corporation, the transferee is not chargeable with either corporate debts or unpaid balances on the stock; that, while he is bound to protect and indemnify his transferror, he is not liable to the corporation or corporate creditors or other stockholders; that the transferror is not released from liability until the transfer is duly registered in the corporate books.

But an examination of the authorities will prove that this rule has not always been rigidly adhered to, but is subject to numerous exceptions and qualifications. It has, for example, been frequently held that where the corporation accepts the transferee as a stockholder, and he exercises any of the rights or accepts any of the benefits of a shareholder, he will be liable as such, although no transfer has been made on the books of the company. It has also been held that where the transferror has done all he was required to do in the premises, but that, through the negligence or fault of the company, no transfer was entered on its books, the transferror was released; applying the principles that a party cannot take advantage of his own wrong, and that in equity that will be considered done which ought to be done. Whitney v. Butler, 118 U. S. 655, 7 Sup. Ct. 61; Ex parte Bagge, 13 Beav. 162; Young v. McKay, 50 Fed. 394; Chouteau Spring Co. v. Harris, 20 Mo. 382. It will also be found from the authorities that the rule, even when held applicable, has been very liberally construed, both as to the character of the entry of the transfer, and of the book where it is made. Cutting v. Damerel, 88 N. Y. 410. We have held, in common with courts generally, that the provision that a transfer of stock must be made on the corporate books is intended solely for the protection and benefit of the corporation, and, probably we should have added, its creditors. Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261. It is therefore a provision which the corporation may waive. In considering the utterances of the courts on this subject, it is important to consider in each case how the question arose, and by whom, and for whose benefit, the absence of a transfer on the corporate books was invoked. In many of the numerous cases cited by defendant, the action was against the transferror, who sought to relieve himself from liability by alleging a transfer of his stock. We apprehend, in such a case, the rule would be more rigidly enforced in favor of the corporation, for whose benefit it was designed, than in a case like the present, where the absence of a formal transfer is invoked against the corporation by the transferee, who, as the equitable owner of the stock, ought to pay the call, and who must eventually pay it, if it is paid by any one, for he is at least bound to indemnify the transferror, if the latter has to pay it.

In the present case much stress is laid upon the fact that the Times Company, after its refusal to make the transfer, in November, 1892, because of the nonpayment of a prior call on the stock, never notified the defendant of its subsequent entry of the transfer, or that it recognized it as a stockholder, until it made the call in May, 1894. But there is no force in this suggestion. It is undoubtedly true that a man cannot be made a stockholder without his consent, but the purchase of the stock by defendant was of itself authority to the vendor to make the transfer, or compel the purchaser to make it, on the books of the company. Webster v. Upton, 91 U. S. 65; Wynne v. Price, 3 De Gex & S. 310. Having knowledge of the purchase by defendant, and having possession of the evidence of the fact, it would have been the right, if not the duty, of the Times Company, upon receiving payment of the overdue call on the stock, to record the transfer on its books, in the absence of any request by defendant to that effect, and even against his objections. London & B. R. Co. v. Fairclough, 2 Man. & G. 674; Upton v. Burnham, 3 Biss. 520, Fed. Cas. No. 16,799. But in this case the acts of the defendant amounted to a continuing request to the Times Company to record the transfer on its books, and, even if such a request was necessary, constituted ample authority to do so as soon as the Nimocks assessment was paid. The fact that no new certificate was ever issued to the defendant is immaterial. This would have been additional evidence of ownership, but was not essential to legal ownership, of the stock. Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290.

The books of the Times Company were, perhaps, not in the form to constitute a strict and literal compliance with the statute. There was no one book that contained all that the statute required; but, between the certificate book, and the stock account in the ledger, they contained substantially all that was necessary. The certificate book showed nothing as to what had been paid on the stock, but this was shown by the stock accounts kept with the several shareholders in the ledger. These accounts also showed the names of the stockholders, and the number of shares held by each.

The principal defect in these stock accounts was that they were not in a book that would be readily accessible to inspection by the

public for the purpose of ascertaining who the stockholders were. But the entry in this account of the fact of the execution sale by which the title to the stock had passed from Nimocks to the defendant was a clear recognition by the Times Company of the defendant as a stockholder. The defendant, by its acts, had asserted, and was continuing to assert, that it was a stockholder, and was entitled to the rights of one; and, when advised that the Times Company recognized it as a stockholder, it acquiesced, by making no objection, and, so far as appears, never repudiated this relationship to the corporation until it interposed its defense to this action, unless the act of its attorney in refraining to take part in the shareholders' meeting of June 4 can be so construed. In view of all these facts, and the equitable obligations of the defendant, as purchaser of this stock, to pay subsequent assessments, slight evidence of mutual recognition by the corporation and the defendant of the relation would be sufficient to change the equitable ownership of the stock into a legal ownership, so as to make the defendant liable to the company. Upton v. Burnham, 3 Biss. 431, Fed. Cas. No. 16,798.

Our conclusion is that the acts of the company in making this entry in the stock account of the transfer of title by execution sale to the defendant was not only a clear recognition of it as a stockholder, but a sufficient, although informal, transfer of the stock on corporate books to bring the defendant in privity with, and make it liable to, the corporation. In purchasing stock, the transferee impliedly agrees with the transferror to pay all future calls. According to the doctrine of this court, the person for whose benefit a promise is made may enforce it, though he be a stranger to the contract and to the consideration. A transfer on the corporate books is designed for the benefit of the corporation itself. In view of these facts, and keeping in mind the distinction between an action against the transferror, where the corporation has never recognized the transferee as a stockholder, and refuses to look to him for payment of the call, and an action against the transferee, where the corporation has elected to accept him as a stockholder, and to look to him for payment, it may be doubtful whether there is any sound principle upon which it can be held that the absence of a

transfer of the stock upon the corporate books is ever available as a defense in favor of a transferee who is liable over to his transferror in case the latter has to pay. But it is not necessary to decide that question in this case.

Order reversed.