| 65 | 249 |
|----|-----|
| 65 | 332 |
| 65 | 249 |
| 72 | 315 |
| 65 | 249 |
| 79 | 495 |

JOHN C. OSWALD and Another v. MINNEAPOLIS TIMES COMPANY.[1]

June 23, 1896.

Nos. 10,101—(294).

Judgment against Corporation—Conclusiveness in Action under G. S. 1894, c. 76.

In an action by a judgment creditor under G. S. 1894, c. 76, for the sequestration of the assets of a corporation and the appointment of a receiver, the judgment against the corporation upon which the action is predicated is conclusive upon the stockholders as well as the corporation, unless impeached for fraud by a direct proceeding.

Corporate Indebtedness—Limit—Findings.

Findings considered, and *held* insufficient to show that the claim of certain creditors exceeded, when contracted, the limit of indebtedness for which, under the articles of association, the corporation should be liable at any one time.

Articles of Association—Parol Evidence to Vary.

*Held*, also, that evidence that at the time of the signing of the articles of association, and during the negotiations which resulted in their execution, it was verbally agreed among those who signed them and became stockholders that they should not be individually liable for corporate debts, was inadmissible, because tending to vary the terms, implied by law, of the articles themselves.

Constitutional Liability of Stockholders — Debts Due Stockholders

The constitutional individual liability of stockholders for corporate debts extends to debts due creditors who are also stockholders, as well as to debts due those who are not members of the corporation.

Basting v. Northern Trust Co., 61 Minn. 307, Followed.

*Held*, also, that the Northern Trust Company was a stockholder of the Times Publishing Company. Basting v. Northern Trust Co., 61 Minn. 307, followed.

Appeal by William S. Ankeny and Northern Trust Company, who were admitted as parties to the action, from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Affirmed.

[1] Reported in 68 N. W. 15.

*Geo. T. Halbert* and *Harrison & Noyes*, for appellant Ankeny.
*Carman N. Smith*, for appellant Northern Trust Company.
*Cobb & Wheelwright*, for respondents.

MITCHELL, J.   A record of over 1,000 folios, and briefs with 60 assignments of error, appear formidable, but, when carefully sifted, it will be found that they contain a vast amount of chaff, and very little grain.

The plaintiffs, J. C. Óswald & Co., as judgment creditors, brought this action under G. S. 1894, c. 76, in behalf of themselves and all other creditors, for the appointment of a receiver and the sequestration of the assets of the Minneapolis Times Company, an insolvent corporation.   Ankeny, a stockholder, appeared in the action, and interposed an answer to plaintiffs' complaint, the only substantial portions of which were (1) that plaintiffs' claim upon which the judgment was rendered was contracted after the limit of indebtedness had been reached which the corporation was authorized to contract by its articles of association; (2) that the suit on this claim, and the rendition of judgment thereon, and the issuing and return of execution, and the subsequent commencement of this action, were all the result and culmination of a fraudulent and collusive scheme entered into between plaintiffs and other stockholders and directors of the corporation, to wind up its affairs and force its dissolution.

As to the validity of plaintiffs' claim against the corporation, the judgment is conclusive against the stockholders until reversed for error or impeached for fraud by a direct proceeding.   The judgment cannot be impeached collaterally by stockholders, any more than by the corporation itself.   While the proceedings are profusely characterized as collusive and fraudulent, no facts are alleged or proved to substantiate the charge.   It is not claimed that plaintiffs' claim was not a just and valid one, except that it exceeded the authorized indebtedness.   There is neither allegation nor proof that the corporation was not insolvent, nor that its affairs ought not to be thus wound up, and its assets sequestrated.   On the contrary, the evidence is conclusive that it was hopelessly insolvent, and that the very best thing for both stockholders and creditors was to wind up its affairs precisely in the way proposed by this action.   Neither is

there any evidence of bad faith or collusion unless the fact that both the plaintiffs and the directors and the great majority of stockholders were all alike willing and anxious that the affairs of the company should be wound up in this way, and to that end the legal proceedings were, as between them, amicable. The only fact alleged or attempted to be proved tending to show that these sequestration proceedings were not proper or necessary was that, at the time the execution on plaintiffs' judgment was issued and returned unsatisfied, there were sufficient funds in the hands of the treasurer to pay the judgment. But the corporation was hopelessly insolvent, and known to be so by the plaintiffs; and for them to have taken this money to pay this judgment under the circumstances would have amounted to an unlawful preference over other creditors, which would have required the corporation to make a voluntary assignment, and, in the event of its failure to do so, would have authorized such other creditors to force it into involuntary insolvency. In view of the provisions of the insolvent law, the requirement that the execution shall be returned unsatisfied is more formal than substantial, and hence its regularity will not be scrutinized very strictly. But, in any event, it cannot be thus attacked collaterally, any more than the judgment can.

The court was right in appointing a receiver and sequestrating the assets of the corporation. This disposes of the issue raised by Ankeny's answer to plaintiffs' complaint.

2. In pursuance of the order of the court, the creditors of the corporation became parties to the action, and exhibited their claims. A majority of these creditors were stockholders and directors of the corporation, but some of them were in no way interested in the corporation except as creditors. The only party who opposed the allowance of these claims was Ankeny. He interposed answers to all of them, the only substantial allegations of which were that these debts were contracted after the debt limit of the corporation had been reached, and that that fact was known at the time by the creditors.

All these claims were for money loaned or advanced to the corporation for legitimate use in its business, and it was so used. There is no evidence of any fraud or bad faith in the matter, and it clearly appears that the corporation had and retains the benefit of the

money. In fact, the evidence amply justified the finding of the court that these various loans or advances were actually necessary and essential to the maintenance and continuance of the corporate business. The court finds that up to October 25, 1893, the articles of incorporation provided that the highest amount of indebtedness to which the corporation should at any one time be subject should be $100,000; that from and after May 1, 1893, up to October 25, 1893, the said limit of indebtedness was exceeded; but on the said October 25, 1893, the articles of incorporation were amended to provide that the highest amount of indebtedness at any one time should be $150,000, and that said limit of $150,000 was never exceeded. This is the only finding on the subject, and no other was ever asked for.

Waiving the question whether the finding that the articles of incorporation were amended so as to increase the debt limit was justified by the evidence, and striking it out entirely, the remainder of the finding is wholly insufficient to support Ankeny's defense to the claims. Conceding, without deciding, that the defense interposed would, under the circumstances, have been available if proven, the burden of proving it was on the party interposing it. The debts due these creditors were contracted on various dates between February, 1892, and October, 1893, inclusive. Under any view of the law, each of these debts would be valid up to the limit, and only invalid as to the excess. Kraniger v. People's Bldg. Society, 60 Minn. 94, 61 N. W. 904. For all that appears from the finding at the time any one of these debts was contracted, the entire indebtedness of the corporation at that date, including the debt then contracted, might not have exceeded the limit by more than a nominal amount, and even such nominal excess might have been caused by some other debt subsequently contracted. It requires no argument to show that, upon such a finding, at most nothing more than a nominal part of any one of these creditors' claims could be held invalid. Therefore the trial court committed no error in allowing them. This disposes of the issues between Ankeny and the creditors.

3. Among the creditors whose claims were thus exhibited and allowed was Henry Oswald. At a subsequent stage of the proceedings, he interposed a "supplemental complaint," to establish and enforce the constitutional individual liability of the stockholders for the corporate debts. This was the sole purpose of this complaint,

and the only relief asked for. The names of those alleged to be stockholders, and the amount of stock held by each, were stated in this complaint. Of these alleged stockholders, Ankeny and the Northern Trust Company appeared, and interposed answers to this supplemental complaint. The answer of Ankeny occupies nearly one-ninth of the entire paper book, and consists largely of matter wholly irrelevant to any issues tendered by the supplemental complaint, which was very properly stricken out by the court.

Aside from denials, its only allegations, if any, which were at all relevant, were that, at the time the corporation was organized and its stock subscribed for, it was done with the express understanding and agreement among the stockholders that the company was organized and should be conducted as an exclusively manufacturing corporation, and that the stockholders should not be individually liable on their stock for corporate debts. The articles of corporation show that the company was not organized as a manufacturing corporation, and that, under these articles, the stockholders would, under the constitution, be liable for corporate debts to the amount of stock held or owned by them. Oswald v. St. Paul Globe Pub. Co., 60 Minn. 82, 61 N. W. 902. Upon the trial, Ankeny offered to show by the oral testimony of a witness that at the time of the signing of the articles of incorporation, and during the negotiations which led to the signing of them, it was agreed between all the parties signing the articles that there should be no liability greater than the amount of stock subscribed, and that he subscribed for his stock relying upon that agreement. This offer was properly rejected, under the rule that parol evidence is inadmissible to contradict or vary written contracts. This rule applies not only to what is expressed in the instrument, but also to all the implications and intendments which the law attaches to that which is expressed. It has been held that where a person accepts the written obligation of a corporation, and at the same time orally agrees that the stockholders should incur no personal liability for the claim, this agreement is binding, and may be proved by parol evidence, as a distinct and separate oral agreement. See Brown v. Eastern Slate Co., 134 Mass. 590. This is the extent to which the authorities cited by counsel go. But in such cases the effect of the evidence is not to prove a contemporaneous oral agreement varying the terms of the articles of incorporation,

but a subsequent waiver of one of these terms for a valuable consideration. The parol evidence was properly excluded.

There is one other point made by the appellants that may be properly considered on this contention. It is that the constitutional liability of stockholders extends only to the claims of what counsel calls "outside creditors," and not to the claims of those creditors who are themselves stockholders. There is no merit in this contention. Stockholders may become creditors of a corporation the same as other persons, and the constitutional provision applies to all corporate debts without exception. Of course, a stockholder is not relieved of any part of this liability merely because he is also a creditor. The maximum amount for which he is individually liable depends upon the amount of stock owned and held by him, precisely as if he was not a creditor; and, in determining what percentage of that maximum he and they should be assessed, his claim is to be taken into account the same as the claims of other creditors. It is held in some jurisdictions that a creditor who is also a stockholder cannot bring an action at law against his co-stockholders to enforce a statutory liability for corporate debts; that the only remedy for such a creditor is by bill in equity for contribution. But however that may be, proceedings under chapter 76 being essentially equitable, as well as extremely flexible, in their nature, there is no difficulty in working out and enforcing through them the rights and liabilities, both legal and equitable, of all creditors and stockholders.

4. The answer of the Northern Trust Company to the supplemental complaint of Henry Oswald tenders only one material issue, which is that it denies that it is, or ever was, a stockholder of the insolvent corporation. An examination of the evidence discloses that the facts do not differ in any essential particular from those presented by the record when this same question was before us on the appeal in an action by the receiver to collect an unpaid stock subscription. Basting v. Northern Trust Co., 61 Minn. 307, 63 N. W. 721. In that case the trial court dismissed the action when the plaintiff rested, but we cannot discover that the evidence introduced by the Trust Company on this trial tended in any material respect to impair the force of the evidence on behalf of the plaintiff, which was substantially the same in both cases.

Counsel calls our attention to the fact that in the former case we

erroneously assumed that, at the time of the demand for a transfer of the stock, the Trust Company left with the Times Company, not only the written notice that it was the owner of the stock, and demanded its transfer, but also the old certificate of stock, indorsed by Nimmocks, and the sheriff's certificate of the sale of the stock on execution, as evidence of its ownership; whereas it appeared on this trial that the Trust Company only left the notice with the Times Company, and, after producing and exhibiting the old stock certificate and the sheriff's certificate, took them away, after the refusal to transfer the stock. A careful reading of the opinion will show that the fact thus erroneously assumed to exist had no material bearing upon any of the grounds upon which the decision rested. The notice which was left was to the effect that the Trust Company was the owner of the stock, and demanded that it be transferred in its name on the books of the corporation. So far as a continuing demand was concerned (if that was at all necessary), this notice was just as effectual as if the Trust Company had left with it the evidences of its ownership of the stock. In the former case we gave this question as full and careful consideration as we were capable of, and we see no reason for changing the conclusion at which we then arrived; and, as we do not think we could add anything to the reasons which we then gave for that conclusion, no good purpose would be subserved by reopening the discussion of the subject.

What we have said disposes of every question raised by the numerous assignments of error of both appellants which we deem of sufficient importance to require any special notice.

Order affirmed.