## HAMILTON v. LOEB.

(Circuit Court, E. D. Pennsylvania. June 10, 1910.)

### No. 346.

1. COURTS (§ 371*)—FEDERAL COURTS—PROCEDURE.
    A federal court must decide a point for itself, when it has not been passed on by the courts of the state under which it arises.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 972; Dec. Dig. § 371.*]

2. CORPORATIONS (§ 244*)—STOCKHOLDER'S DOUBLE LIABILITY.
    Under Const. Minn. Art. 10, § 3, making stockholders in certain corporations liable to the amount of their stock, and under Rev. Laws Minn. 1905, §§ 2863, 2864, regulating transfers of stock, a transferee, who has never been a stockholder on the corporate books, nor enjoyed a stockholder's privilege, nor held himself out as a stockholder, and has not destroyed the registered owner's primary liability, cannot be charged with double liability, regardless of his liability to the registered owner.
    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 244.*]

At Law. Action by Charles R. Hamilton, receiver, against Ferdinand L. Loeb. On final hearing. Judgment for defendant.

George Wentworth Carr and James E. Trask, for plaintiff.
Abraham Israel and John G. Johnson, for defendant.

J. B. McPHERSON, District Judge. This is an action at law. After the evidence had all been offered, each side asked for binding

instructions, and thereby submitted the decision of all questions to the court. In my opinion, the defendant is entitled to a general verdict; but I think I should add a statement of my reasons for this conclusion.

The suit is brought to enforce the double liability imposed by the Constitution and the statutes of Minnesota upon stockholders in certain corporations. The plaintiff is suing in behalf of the creditors of the Evans-Johnson-Sloane Company, and his right to recover must rest upon the ground that the defendant is liable as a holder of stock, within the meaning of the Minnesota law. The facts are these: On February 25, 1905, certain shares were assigned to the defendant by an instrument of writing, and were paid for by him. Thereupon delivery was made of the certificates, indorsed in blank; but no transfer was ever made upon the books of the corporation. The constitutional provision is as follows:

"Each stockholder in any corporation (except those organized for the purpose of carrying on any kind of manufacturing or mechanical business) shall be liable to the amount of the stock held or owned by him." Const. Minn. art. 10, § 3.

Sections 2863 and 2864 of the Revised Laws of Minnesota are as follows:

"Transfer of Stock.—The delivery, by the rightful owner or by one by him intrusted therewith, to a bona fide purchaser or pledgee for value, of a certificate of stock duly transferred in writing by the holder personally, or accompanied by his power of attorney authorizing such transfer, shall be sufficient to transfer title, but shall not affect the right of the corporation to pay any dividend thereon, or to treat the holder of record as the owner in fact, until such transfer has been recorded on its books, or a new certificate issued to the transferee, who, upon delivery of the former certificate to the treasurer, shall be entitled to receive such new one.

"Effect of Transfer—Stock Books.—The transfer of shares is not valid, except as between parties thereto, until it is regularly entered on the books of the company, so far as to show the names of the persons, by and to whom transferred, the number or other designation of the shares, and the date of the transfer; but such transfer shall not in any way exempt the person making the transfer from any liabilities of said corporation which were created prior to such transfer. The books of the company shall be so kept as to show intelligently the original stockholders, their respective interests, the amount which has been paid in on their shares, and all transfers thereof, and such books, or a correct copy thereof so far as the items mentioned in this section are concerned, shall be subject to the inspection of any person desiring the same."

One of the by-laws of the Evans-Johnson-Sloane Company provides that:

"Section 1. The stockholders of said company shall be entitled to certificates of stock signed by the president and secretary, with the corporate seal affixed thereto, and shall be numbered and registered as issued.

"Sec. 2. Transfer of stock shall be made only on the books of the company, either in person or by attorney, and the possession of said stock shall not be regarded as evidence of ownership of the same unless issued or duly transferred to the person holding the same."

The controlling question of law is whether, under the facts just stated, the defendant can be charged with the double liability of a stockholder. The question has never been decided by the Supreme

Court of Minnesota, as a brief reference to the cases will I think make clear. In Baldwin v. Canfield, 26 Minn. 43, 55, 1 N. W. 261, 271, 276, the subject seems to have come before the Supreme Court of the state for the first time. It appeared that a stock certificate had been delivered by way of pledge, but that no transfer had been made upon the books of the corporation. Nevertheless the transfer was held to be valid, the court saying:

"Provisions of this kind are intended solely for the protection and benefit of the corporation. They do not incapacitate a shareholder from transferring his stock without any entry upon the corporation books. * * * Except as against the corporation, the owner and holder of shares of stock may as an incident of his right of property transfer the same as any other personal property of which he is owner. It appearing in this case that the certificates of stock (the evidence of title to the same) were delivered to the plaintiffs in pledge and as security for the payment of the notes and the return of the gas stock loaned, the court below was right in finding the plaintiffs to be bona fide holders of the shares represented by said certificates as collateral security."

The plaintiffs were the transferees of the stock, and were seeking to enforce their rights as such.

In Nicollet National Bank v. City Bank, 38 Minn. 85, 35 N. W. 577, 8 Am. St. Rep. 643, the plaintiff, an assignee of stock, sued for damages because the defendant corporation had refused to transfer the shares upon its books. It was said, approving Baldwin v. Canfield:

"The assignment to the plaintiff without a transfer on the books of the bank did not constitute a complete transfer in merely legal contemplation, so as to effect an actual substitution of shareholders binding upon the corporation. But as between the immediate parties to the transaction, the assignment was effectual, and would be recognized and enforced, at least in equity, as against all parties not showing a superior right."

In Joslyn v. St. Paul Distilling Co., 44 Minn. 183, 46 N. W. 337, it appeared that a certificate of stock in the defendant company had been issued to Lizzie M. Hicks, and the purpose of the suit was to cancel the certificate upon the ground that she had fraudulently obtained it, and that the plaintiff was the real owner of the stock. The trial court had jurisdiction of the parties defendant, but did not obtain possession of the certificate issued to Mrs. Hicks. In refusing the relief prayed, upon the ground that possession of the certificate was essential, the court said:

"The character and qualities of stock certificates are the only questions involved here. If they are to be treated as if they were shares themselves, and when properly transferred, as passing to the assignee all the equitable rights of the holder, and the legal right to be admitted as a shareholder on the books of the association, it must follow that, upon a regular assignment and delivery of the certificates, there has been transferred to the purchaser the full legal and equitable ownership of the shareholder's contract, with all the indicia of such ownership. While there has been some difference of opinion upon this, the weight of authority is undoubtedly, that where a corporation having authority to issue a stock certificate does issue such a certificate, wherein it is affirmed, as in the case at bar, that a designated person is entitled to a certain number of shares of stock, transferable only on the books of the association, on the indorsement and surrender of the certificate itself, it thereby holds out to persons who may deal in good faith with the person named

in the certificate that he is the owner, and has capacity to transfer the shares. There is in the certificate, which evidences and represents the shares, the assurance of the corporation to the commercial world that no prior right to the stock can be obtained, unaccompanied by possession of the certificate, and that the shares shall not be transferred upon the books of the corporation unless the certificate is first surrendered.  *  *  *

"The certificate itself must be regarded as a continuing affirmation of the ownership by the person to whom it has been issued, and of his power over and right to sell the stock, until this power and right has lawfully terminated. It is clear that at any time, at least prior to the commencement of this action, a purchaser of the certificate, in good faith, from Mrs. Hicks or her assigns, would have had the right to rely on the certificate securing to him the shares of stock it represented and evidenced"—citing numerous cases.

In Lund v. Wheaton Roller Mill Co., 50 Minn. 36, 52 N. W. 268, 36 Am. St. Rep. 623, Baldwin v. Canfield was again referred to with approval, and it was decided that a sale and transfer of corporate stock, although not entered on the books of the corporation, is effectual as between the parties, and takes precedence of a subsequent attachment in behalf of a creditor of the vendor. The dispute was between the assignee and the attaching creditor. In Prince Investment Co. v. St. Paul, etc., Land Co., 68 Minn. 121, 70 N. W. 1079, it was again decided that an owner of stock in a corporation is not incapacitated from transferring it, even if the transfer thereof is not entered upon the books of the corporation, and that an assignee of such stock without a transfer upon the books of the corporation has an equitable title which will be protected as against all parties not showing a superior right. The corporation was seeking to enforce a lien on the stock against the vendor, and was denied such right because it had had prior notice of the vendee's title. In the course of the opinion the court said also:

"While the statute ought not to be so construed as to interfere with the sale and transfer of stock as personal property, yet it is quite appropriate and necessary that there should be record evidence on the books of the company conclusive as to the right to vote and receive dividends. Otherwise the corporation might frequently be greatly embarrassed, and its rights endangered, by the claims of parties asserting the right to vote and receive dividends. If the transferee omits to have the transfer registered, he thereby waives his right to vote and receive dividends as against the corporation, whatever may be his subsequent right against the transferror receiving such dividends as trustee. This provision relating to transfer on the books of the corporation is, therefore, solely for the protection and benefit of the corporation."

In none of the foregoing cases was the subject of double liability either involved or considered. Some of the following decisions are concerned with various phases of this question. In re People's Insurance Co., 56 Minn. 180, 57 N. W. 468, was primarily a question of practice. The court decided that in the proceeding then before the court the constitutional or statutory liability of a stockholder for debts of the corporation could not be enforced; but the court went on to consider a stockholder's liability upon an unpaid subscription (not his double liability), and held that his liability for an unpaid subscription does not continue after the stockholder has transferred the stock (except where the transfer was for the purpose of defrauding creditors), but that the transferee of such stock was solely liable for

the unpaid subscription. In Olson v. Cook, 57 Minn. 552, 59 N. W. 635, the method of procedure to enforce the double liability of stockholders was considered, and it was held that in the particular form that had been there adopted such liability could not be enforced. But the court declared that one who had acquired stock in a banking corporation incurred the statutory liability, not only in respect to corporate debts contracted after he became a stockholder, but also in respect to debts contracted before that time. No question concerning the effect of failure to transfer the stock upon the corporation books was involved. The case of Basting v. Northern Trust Co., 61 Minn. 307, 63 N. W. 721, only decided that upon the facts in that case there had been a sufficient transfer of stock upon the corporate books, and a sufficient mutual recognition by the corporation and by the transferee of the relation of stockholder, to change the equitable ownership of the stock into a legal ownership, so as to make the transferee liable to the corporation for the payment of calls on the stock—not for the payment of the double liability. In the course of the discussion the court said:

"Our conclusion is that the act of the company in making this entry in the stock account of the transfer of title by execution sale to the defendant was not only a clear recognition of it as a stockholder, but a sufficient, although informal transfer of the stock on the corporate books to bring the defendant in privity with, and make it liable to, the corporation. In purchasing stock, the transferee impliedly agrees with the transferror to pay all future calls. According to the doctrine of this court, the person for whose benefit a promise is made may enforce it, though he be a stranger to the contract and to the consideration. A transfer on the corporate books is designed for the benefit of the corporation itself. In view of these facts, and keeping in mind the distinction between an action against the transferror, where the corporation has never recognized the transferee as a stockholder, and refuses to look to him for payment of the call, and an action against the transferee, where the corporation has elected to accept him as a stockholder and to look to him for payment, it may be doubtful whether there is any sound principle upon which it can be held that the absence of a transfer of the stock upon the corporate books is ever available as a defense in favor of a transferee who is liable to his transferror in case the latter has to pay. But it is not necessary to decide that question in this case."

Oswald v. Minneapolis Times Co., 65 Minn. 254, 68 N. W. 15, merely presented again the question of fact that had previously been determined in Basting v. Northern Trust Co., supra. In Hunt v. Reardon, 93 Minn. 375, 101 N. W. 606, an effort was made to enforce the double liability upon 15 shares that had been issued in the name of the defendant's wife. The decision of the case depended wholly upon questions of fact, and on the evidence then laid before the court it was held that the defendant had always been the owner of these 15 shares, and that, although they had been issued in his wife's name, he continued to be the owner and was subject to the statutory liability. Gunnison v. United States Investment Co., 70 Minn. 292, 73 N. W. 149, decided that a shareholder in a corporation could not affect his constitutional liability for the prior debts of the corporation, even by a bona fide sale of his stock to a solvent party and a transfer thereof on the books of the corporation. The court declared that it was entirely competent for the Legislature to regulate the transfer of shares

in a corporation, and to declare the effect of such transfer if no impairment of liability as fixed by the Constitution was made. Such liability, it was said, may be increased, but cannot be diminished, by the Legislature; the court being of opinion that:

"The prohibition against the transfer of shares in a corporation, so as to affect the liability of stockholders for existing debts of the corporation, is absolute."

The case is wholly concerned with the power of a registered stockholder to affect his liability by the sale of his stock. Dent v. Matteson, 70 Minn. 519, 73 N. W. 416, arose under the national banking act, and merely decides that, where a stockholder of a national bank died, and the stock was distributed to his widow, heirs, and next of kin, but without being transferred on the books of the bank, the distributees were liable in respect to an assessment upon these shares, but only to the extent of the assets received by them from the estate. The case is put upon the ground that the estate continued to be liable, as the following quotation will show:

"We are clearly of the opinion that, as a general rule, the statutory or constitutional double liability of a stockholder survives his death, whether the corporate indebtedness was incurred before or after his death, and whether the corporation becomes insolvent before or after his death. One of the very objects of organizing corporations is to prevent the death of any of its members from interfering with the business or affairs of the concern. The stockholder's contract does not contemplate a hiatus in liability resulting from his death. Whether he is living or dead, there may be no assets out of which the liability can be satisfied. But the liability contracted by the stockholder does not terminate with his death. His is a continuing contract. He contracts for a liability which is to continue, at least, until his stock is transferred to another on the books of the company, or until such a transfer is rightfully demanded."

In Harper v. Carroll, 66 Minn. 487, 504, 69 N. W. 610, 1069, the facts that are now pertinent thus appear: It was shown that Hill had transferred certain stock to Jenks. This transfer was not entered on the books of the bank, but a transfer of the same stock was afterwards entered from Hill to a man named Shepherd. Up to the date of this latter transfer, therefore, Hill appeared on the books of the corporation to be the holder of the stock. Hill and Jenks were two of the parties defendant to the suit, and Hill filed a cross-bill against Jenks to compel him to respond to the creditor, who as plaintiff was seeking to enforce the double liability upon this stock. Hill contended that as between him and Jenks the latter was primarily liable on the stock, even although he had failed to register the transfer. But the court said:

"We need not consider whether or not under these circumstances Jenks would, at the election of the creditors, be liable directly to them. * * * We are satisfied that in any event the creditors need not undertake to enforce such liability against Jenks, or accept the benefit of any such attempted enforcement of the same by Hill. They are entitled to look solely to the liability of the persons who appear by the books to have been stockholders. However, under the circumstances, we see no objection to Hill retaining his present hold on Jenks for the purpose of compelling contribution by the latter in this action for any sum which the former may be compelled to pay on a judgment against him herein, after he has paid the same."

· In Minneapolis Base Ball Co. v. City Bank, 66 Minn. 441, 69 N. W. 331, 38 L. R. A. 415, it was decided that a receiver appointed to sequester the assets of an insolvent corporation had no authority (except in cases where it was otherwise provided by statute) to enforce the double liability of the stockholders for the debts of the corporation. Such liability was declared not to be an asset of the corporation, as are unpaid stock subscriptions, but to be a liability belonging directly to the creditors, and to be enforced only by them. "The corporation cannot enforce it. It is no part of its assets."

Markell v. Ray, 75 Minn. 138, 77 N. W. 788, merely decided that where an executor, pursuant to the provisions of a will, procured stock which stood in his own name on the books of a corporation to be transferred to himself as executor, the estate was primarily liable upon the subsequent insolvency of the corporation, and the executor was only secondarily liable on such stock. In Tiffany v. Giesen, 96 Minn. 488, 105 N. W. 901, the double liability was held to be enforceable, although the stockholder had transferred his stock on the books of the corporation in good faith for a valuable consideration. It was decided that the original stockholder was liable in an independent action, and that the transferee need not be made a party; the court saying that, if it was desired to have the transferee made a party on the ground that execution might be enforced against him in the first instance because of his primary liability, the original stockholder should have made application for that purpose.

It is apparent, I think, from the foregoing citations, that the question under consideration is still open in Minnesota, and it follows, therefore, that a federal court is bound to decide the dispute for itself. As my decision will certainly be reviewed, I shall not enter upon an elaborate discussion of the cases in which the opposing views of the question are maintained. They are referred to in the briefs of counsel, and will be presented to the Court of Appeals. In my judgment the weight of authority supports the proposition that, where a transferee of certificates of stock has never been a stockholder upon the books of the corporation, and has neither enjoyed the privileges of a stockholder nor held himself out as such, and has not destroyed the primary liability of the registered owner, he cannot be charged with the double liability. Whether he may be liable to his vendor in case the latter (being the registered owner) has been compelled to pay is a separate question, and need not now be considered.

I further find that the defendant was not a registered stockholder, he did not hold himself out as such, he has in no way interfered with the liability of his vendors, who were and are the registered owners of the stock, and he did not exercise any of the privileges of a stockholder, or take part as such in the management of the corporate affairs. Under such circumstances, I think he is not exposed to the liability declared by the Minnesota law.

The clerk is directed to enter a finding in favor of the defendant, upon which judgment may be entered in due course.