**J. Herschel HARDY, Plaintiff-Appellant,**

v.

**BANKERS LIFE & CASUALTY CO. et al., Defendants-Appellees.**

No. 11535.

United States Court of Appeals
Seventh Circuit.

April 12, 1956.

Rehearing Denied April 27, 1956.

Writ of Certiorari Denied
June 11, 1956.
See 76 S.Ct. 1051.

Irving Breakstone, John O'C. Fitzgerald, Joseph Keig, Sr., Chicago, Ill., for appellant.

Charles F. Short, Jr., Joseph R. Tottenhoff, Zita Stone, Chicago, Ill., Narcisse A. Brown, Chicago, Ill., of counsel, for appellees.

Before LINDLEY and SCHNACKENBERG, Circuit Judges, and PLATT, District Judge.

LINDLEY, Circuit Judge.

Plaintiff appeals from a summary judgment dismissing his complaint. For purposes of this memorandum the term "defendants" includes the appellees here, Bankers Life and Casualty Co., Great Plains Hotel Co., Inc., and certain officers of each of those corporations. The reference "Fiscal", when employed, refers to Fiscal Agents, Inc., a Texas Corporation, and certain other parties who were named as defendants below but dismissed from the cause on plaintiff's motion on June 23, 1955.

The complaint averred that defendants had conspired among themselves and with Fiscal through a series of transactions, beginning in 1948, to deprive plaintiff

of his rights in some 120 parcels of real estate consisting of hotels, apartment buildings and business properties. The following factual statement, although burdensome, represents the most feasible distillation of the complaint and record sufficient to present the issues.

In 1948 plaintiff owned some 120 hotels, apartment houses and business properties, or equities therein, located in various states. During the year he entered into negotiations with defendant McArthur, Bankers' president, seeking a loan to meet his needs growing out of demands by the Bureau of Internal Revenue on account of income tax deficiencies. These negotiations resulted in a written agreement whereby, in consideration of McArthur's promise to arrange loans to plaintiff aggregating approximately $1,000,000, plaintiff undertook to organize an Illinois corporation, to transfer all his property thereto in exchange for all of its capital stock and to meet certain security requirements of the document. The money loaned was to be used only for meeting the obligations of the proposed corporation and plaintiff's income tax obligations. Pursuant to this agreement, plaintiff organized defendant Great Plains Hotel Co., Inc.,[1] and transferred to it all his properties in exchange for all of its capital stock, i. e., ten shares. Subsequent transactions occurred between the parties, including the preparation of a voting trust agreement on December 1, 1949, whereby Hardy agreed to transfer his shares of stock to the trustees in exchange for voting trust certificates executed by them. However, this agreement was never executed. The complaint details numerous oral promises by McArthur, in addition to those evidenced by the writings to which reference has previously been made, which, allegedly, though never performed, were in their incipiency misrepresentations

1. Formerly Hardy International Hotel Co., Inc. Since facts related herein refer to events involving this defendant under each of its corporate names, references to this corporation variously appear as "International" or "Great Plains" in accordance with the context of the specific reference.

willfully made with intent to defraud plaintiff.

Various loans were made to plaintiff or International by Bankers. In his complaint, plaintiff asserted that McArthur refused to perform an undertaking of the original agreement for a loan of $800,000 to International to be secured by first mortgages on that corporation's real property, until plaintiff agreed to pledge his International stock as further security and to deliver complete control of International to McArthur and Bankers. During the same period, it was alleged, McArthur caused plaintiff to execute a note in the amount of $250,000 as additional security for loans by Bankers to International and to pledge his stock to secure payment thereof. McArthur, it was said, represented at that time that no personal judgment would ever be sought on the note. Notice of foreclosure on the collateral was given on September 4, 1951. Plaintiff averred that he tendered cash in full payment of the obligation, but that it was refused. The latter averment was not denied, but it affirmatively appears that, at the time the tender was made, Bankers' acceptance thereof was restrained by an injunction issued in the course of the state court proceeding subsequently discussed.

Meanwhile, on February 17, 1951, plaintiff's wife filed against him in the District Court for the Fourth Judicial District of the State of Minnesota a complaint for divorce, which later was amended by adding Bankers and Great Plains as parties defendant. A second amended complaint filed March 28, 1952, alleged, *inter alia*, that Bankers and Great Plains had control of plaintiff's properties; that plaintiff was conspiring with those corporations to defraud Mrs. Hardy of her share of plaintiff's property. Bankers answered, denying the averment of conspiracy and asserting as an affirmative defense the existence of a conspiracy between Mrs. Hardy and plaintiff to defraud that company by securing loans based upon fraudulent valuations of property.

This cause came on for trial shortly after March, 1952. On June 3, 1952, the court entered an interlocutory decree, based on its finding, *inter alia*, that no conspiracy to defraud existed between any of the parties. The decree approved a stipulation entered into by the parties on June 2, 1952, and provided that the court retain jurisdiction of the cause for the purpose of carrying it out. This stipulation included Bankers' agreement to refinance and reorganize Great Plains in accord with a plan spelled out therein. The details of this undertaking we consider unimportant in this inquiry, except for the provisions (1) that plaintiff, Mrs. Hardy and Great Plains agreed to convey certain properties to Bankers and the latter to assume all indebtedness against same; (2) that all claims against Great Plains except those evidenced by mortgages on real property would be released by Bankers; (3) that Bankers would cancel the $250,000 note and deliver it to plaintiff together with the ten shares of stock; (4) that Mrs. Hardy was to receive three shares of this stock, which Bankers agreed to purchase from her for $125,000; and (5) that plaintiff was to retain the remaining seven shares as his property. Each party further agreed to release all others from any and all claims except those created by the stipulation.

After this agreement had been approved by the court and incorporated in its interlocutory decree entered June 3, 1952, plaintiff refused to abide by certain of its provisions. On Mrs. Hardy's motion, on June 16, 1952, a rule was entered against plaintiff to show cause why he should not be held in contempt for failure to perform the provisions of the stipulation. Plaintiff replied that he had ascertained that the deal was unworkable and, further, that he had been induced by misrepresentations of McArthur to make the stipulation. On June 24 the court discharged the rule to show cause. On the same date, plaintiff moved to vacate the stipulation, for several reasons, including an averment of fraudulent representations by McArthur and

others. At the same time a motion was made challenging the jurisdiction of the court to settle the property issues between plaintiff and the other parties in that matter inasmuch as it was argued those issues were beyond the scope of the pleadings. These motions were denied October 2, 1952. Meanwhile, on August 25, 1952, plaintiff executed the release on which defendants herein relied in their motion for summary judgment in the district court. On November 7, 1952, the state court entered judgment, incorporating therein its interlocutory decree and the stipulated property settlement. No appeal was taken from that judgment.

The instant cause was instituted March 29, 1954. In addition to the transactions and court proceedings mentioned, it was averred in the complaint that Fiscal, on August 25, 1952, negotiated an agreement with plaintiff whereby it undertook to purchase from plaintiff the seven shares of stock awarded him by the Minnesota decree for certain valuable considerations including the assumption of payment by Fiscal of a promissory note in the amount of $652,170.15, which Great Plains had executed in favor of Bankers pursuant to the Minnesota decree, and to secure payment of which the stock had been pledged. It was further alleged that Fiscal never intended to perform this agreement and that it was a participant with defendants in furtherance of the scheme to defraud plaintiff, and that, pursuant to this scheme, Fiscal defaulted on the $652,000 note and Bankers, without notice to plaintiff, foreclosed on the seven shares of Great Plains stock and sold it to itself for a mere fraction of its value. This default occurred in July 1953, some eight months after the entry of the Minnesota decree.

Defendants' motion for summary judgment in the district court was based upon the written release executed by plaintiff on August 25, 1952, in which he released all claims against defendants except those embodied in the June 2, 1952, written stipulation incorporated into the final judgment of the Minnesota court in the divorce proceeding. These documents were asserted as a complete bar to plaintiff's claim, defendants contending that the present cause constituted a collateral attack on the unreversed judgment of the state court.

The motion for summary judgment was granted March 8, 1955. Plaintiff's first appeal from that order was dismissed by this court as premature, it appearing that the complaint asserted a single claim against defendants and Fiscal, that no service could be had on Fiscal, that the judgment order ran in favor of defendants only and that the cause was, therefore, not finally resolved. 7 Cir., 222 F.2d 827. Thereafter, on June 23, 1955, orders were entered upon plaintiff's motions dismissing the cause as to Fiscal and granting final judgment for defendants. This appeal is taken to review that judgment.

The only question before us is whether any genuine issue as to any material fact was raised by the pleadings. Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C. That question largely turns on the effect to be given to the Minnesota judgment.

Plaintiff asserts that that judgment is void insofar as it purports to settle property rights as between himself and defendants. In this respect he contends that the state court was without jurisdiction to go beyond the pleadings in the divorce action and resolve controversies between plaintiff and defendants, that the judgment itself is merely one step in defendants' alleged conspiratorial scheme and that the release executed pursuant to the judgment is void because it was executed under duress of a threatened contempt citation.

 We think these contentions are without merit. Since jurisdiction rests on diversity of citizenship, Illinois law as to defendants' liability governs the decision of this cause. Sutton v. Leib, 342 U.S. 402, 72 S.Ct. 398, 96 L.Ed. 448; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. In accord with the Illinois law, we must determine the

effect of the judgment under attack by applying the law of Minnesota. Belton v. Fisher, 44 Ill. 32. See, Merriam v. Merriam, 207 Ill.App. 474.

We are of the opinion that the Minnesota judgment is *res judicata* as to all issues presented by plaintiff's complaint. There is no contention that the court did not have jurisdiction over the subject matter of that cause or over plaintiff and defendants, Bankers and Great Plains. The only argument urged in this respect is that the settlement of claims and cross-claims between plaintiff and defendants was beyond the scope of the pleadings and that it was therefore beyond the jurisdiction of the court. While the earlier decisions of Minnesota courts are not without apparent conflict on the subject, we think it clear that the governing rule of the cases is that a judgment going beyond the pleadings is not void when the issues decided thereby are litigated by consent. See *e. g.*, State ex rel. Carmody v. Reed, 132 Minn. 295, 297, 156 N.W. 127, 128. Moreover, any doubt in earlier case law has been resolved by the provision of Rule 15.02 of the Minnesota Rules of Civil Procedure for the District Courts that "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * *" This rule is specifically applicable to the situation before us.

Furthermore, any assertion that plaintiff failed to understand that the stipulation did resolve all his claims against these defendants is dispelled by the fact that he made two attempts in the prior litigation to nullify that document. Thus this complaint constitutes the third attack which plaintiff has directed against the judgment. In response to a contempt citation growing out of plaintiff's failure to perform in accord with the stipulation, plaintiff asserted that he executed the stipulation in reliance on misrepresentations of all defendants now before us and that his auditors subsequently determined that the

deal was unworkable. This contention was rejected by the Minnesota court. Following the contempt proceedings plaintiff moved to vacate the stipulation urging that it represented merely the fruition of a conspiracy by defendants to defraud plaintiff, and that approval of the stipulation was beyond the jurisdiction of the court in the divorce proceeding. This motion was denied also. Denial of this motion inherently included a determination that the court had jurisdiction of the cause and that no fraud affected its judgment. No appeal was taken. It is axiomatic that authority to determine its own jurisdiction is inherent in the power of a court of general jurisdiction, and that its determination sustaining its own jurisdiction is not subject to collateral attack. Walling v. Miller, 8 Cir., 138 F.2d 629, 632, certiorari denied 321 U.S. 784, 64 S.Ct. 781, 88 L.Ed. 1076.

There can be no doubt as to plaintiff's comprehension of the scope of the Minnesota decree at the time it was entered. The record of that proceeding contains his signed statement that he executed the stipulation against the advice of his attorneys to the effect that he was stipulating himself into bankruptcy.

Insofar as the transactions now complained of occurred prior to entry of the Minnesota decree, all claims arising therefrom were resolved by that decree. In re Melgaard's Will, 200 Minn. 493, 274 N.W. 641, was a proceeding in opposition to the final account submitted by the trustees of an express trust. Pursuant to the applicable statute, the trustees had, over a period of several years, submitted annual accounts which had been approved by the court with the consent of all beneficiaries. In opposition to the final account, the latter asserted that these orders approving preliminary accounts had been fraudulently obtained and should be vacated. The court held that these were orders which could not be collaterally attacked and that the beneficiaries' objections thereto constituted such an attack. The language found in

274 N.W. at page 646, is pertinent: "A 'judgment' has been well defined as 'the final consideration and determination of a court of competent jurisdiction upon the matters submitted to it, in an action or proceeding.' 15 R.C.L. 569. Why shouldn't the so-called preliminary orders * * * be considered judgments rendering their subject-matter *res judicata*? There was jurisdiction of the subject-matter and of the parties; there was submission of matter for decision, and decision on the merits. There was no contest or trial, but what of it? There was opportunity for contest and trial. That is sufficient. 15 R.C.L. 953. That a judgment is 'based upon an agreed statement of facts, or if it could be considered a consent judgment, does not lessen its force or effect.' Woods Brothers Construction Company v. Yankton County, S. D., 8 Cir., 54 F.2d 304, 308, 81 A.L.R. 300." The Minnesota law is established by this decision. To the extent that the complaint relies upon transactions antedating the decree, then, it must fail. In re Melgaard's Will, supra; Oswald v. Minneapolis Times Co., 65 Minn. 249, 68 N.W. 15; Harchenko v. Harchenko, 77 N.D. 289, 43 N.W.2d 200. See Walling v. Miller, supra.

■ The conclusion we have reached is not affected by the fact that the defendants McArthur and Little were not named as parties in the Minnesota action. These individuals are the presidents of defendants Bankers and Great Plains respectively, and the whole basis of plaintiff's attacks before the Minnesota court on the stipulation was his assertion that these two individuals were the instruments of the alleged fraudulent scheme. Thus the fraud issue as to all defendants was injected into that proceeding by plaintiff and was resolved against him.

Furthermore, the record leaves no room for doubt that all averments involving defendants grew out of transactions during or antedating the state court proceeding. The only allegation as to any transaction subsequent thereto relates to the asserted fraud of Fiscal in its default on the promissory note. The district court had no jurisdiction over Fiscal, and no well-pleaded fact connects defendants with Fiscal's default.

The principles governing relief from void judgments have no applicability to this case. Even the case principally relied on by plaintiff on his major contention that the Minnesota judgment is void does not support his position, Ingram v. Lewis, 10 Cir., 37 F.2d 259, 70 A.L.R. 702, certiorari denied 282 U.S. 842, 51 S.Ct. 22, 75 L.Ed. 747, presents a factual situation embracing the blackest possible machinations by trustees to rob the minor *cestui* of his trust property culminating in a release procured from the beneficiary by the trustees' fraud mere hours after he achieved his majority. That release was tied in with a voluntary dismissal, with prejudice, of an action in an Oklahoma court against the trustees, brought purportedly on the *cestui's* behalf, but without his knowledge or consent, by third parties, whose only apparent interest in the transaction was to cut for themselves a slice of the tempting succulent pie. Despite the dark picture of fraud painted, the court stated, 37 F.2d at page 263, that the Oklahoma judgment could not be collaterally attacked but that "equity may disregard its effect as a release, if the dismissal was procured by the trustee" in violation of his fiduciary duty. The distinction between that case and the cause before us is obvious. Ingram involved a direct attack in equity to set aside a release procured by the fraud of fiduciaries against an incompetent beneficiary who had not participated in the court proceeding with which the release was connected. On the other hand, the cause before us is a collateral proceeding at law resting on an assertion that the federal courts must wholly ignore a decree entered in an action in which plaintiff participated as a party represented by able counsel at every step of the proceedings, and in which every contention now raised was rejected by the Minnesota

court. Relief from that judgment, if warranted, must be sought in a direct proceeding.

■ The court below properly concluded that no genuine issue as to any material fact was presented for its determination. The judgment is

Affirmed.